**In the Matter of BAKER & GETTY FINANCIAL SERVICES, INC., Baker & Getty Diversified, Inc., and Baker & Getty Securities, Inc., Debtors.**

**Bankruptcy No. B87-00074-Y.**

United States Bankruptcy Court,
N.D. Ohio.

Sept. 8, 1987.

---

Russell A. Kelm, Daniel R. Swetnam, Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, George J. Limbert, Mitchell, Mitchell & Reed, Youngstown, Ohio, for petitioning creditors.

Robert Morrow, Means, Bichimer, Burkholder & Baker Co., L.P.A., Columbus, Ohio, for The First National Bank of Barnesville.

Carl D. Rafoth, Youngstown, Ohio, trustee.

Dwight A. Packard, Cincinnati, Ohio, for Suzan Cordek.

### ORDER ON CREDITORS' MOTION FOR SUBSTANTIVE CONSOLIDATION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause came on for consideration upon the Motion of the Petitioning Creditors for substantive consolidation of the estates of PHILIP CORDEK and SUZAN BIERMAN CORDEK with the estates of the Corporate Debtors. Upon review, the Court determines that substantive consolidation is appropriate in this case.

### FACTS

There are three Corporate Debtors involved in this case. BAKER & GETTY FINANCIAL SERVICES, INC., ("BGFS") was formed August, 1985 to effect transactions in securities and to operate as a broker dealer. In fact, BGFS held itself out as a fully licensed broker dealer and a member of the Securities Investment Protection Corporation, although it apparently never became fully licensed. The second Debtor implicated in this case is BAKER & GETTY DIVERSIFIED, INC. ("BGD"). This entity was formed in December, 1985 to locate and develop real estate investment opportunities for customers of the brokerage firm and to loan funds to BGFS. BAKER & GETTY SECURITIES, INC., ("BGS") was formed in June, 1986 to replace both BGFS and BGD. BGS subsequently filed an application to become a licensed broker dealer in August, 1986, but its application was later withdrawn. Nevertheless, it held itself out as a licensed broker dealer.

PHILIP CORDEK was a director of the three corporations and was the sole signatory on the corporations' various bank accounts. In November, 1986, he admitted that he had undertaken activities as part of a plan to defraud investors. The deception appears to be a classic Ponzi scheme whereby investors were told that CORDEK's uncle in New York had large blocks of stock available for sale at a discount. The investors were told that the stock would be immediately sold at a profit and that they would quickly realize a handsome return on their principal investment. However, instead of purchasing the stock with the investor's money, the funds were used to pay off previous investors. By November 1, 1986, investors appear to have been defrauded of an estimated 3.5 million dollars.

There were five bank accounts which were used by CORDEK for business and personal matters. Three of the accounts were opened in the name of "BAKER & GETTY DIVERSIFIED". Two of the accounts were personal accounts of CORDEK. On numerous occasions, corporate

funds were used for personal matters. For example, corporate funds were used by CORDEK to: (1) purchase automobiles; (2) repay his educational loans; (3) purchase a boat which was eventually titled in his wife's name; (4) buy furniture, jewelry and other personalty; (5) pay for a home located near Cleveland, Ohio, and improvements to that home; and (6) pay for hotel rooms for guests attending his wedding. Conversely, personal funds were used to satisfy corporate obligations. [*See* Petitioning Creditors Exhibits 8C, 8D, 8I, 12A, 2G, 12I, 12J, 12M–12O, and 12Q.] CORDEK testified at a hearing on this Motion that the bank accounts were used interchangeably.

In August, 1986, Mr. Byron Rice, who was a regular business customer of the Bank, approached the FIRST NATIONAL BANK OF BARNESVILLE to obtain a loan. He represented to Mr. Charles Bradfield, President of the Bank, that the purpose of the loan was to permit him and CORDEK to purchase various investments which would be sold a short time later. The proceeds of the sale would then be applied to the loan balance. In his testimony, Bradfield admitted that while he was aware that CORDEK was associated with the BAKER & GETTY corporate entities, he considered his dealings with CORDEK to be personal in nature. However, Bradfield also testified that the Bank did not rely upon CORDEK's creditworthiness nor upon his assets in approving the loan. The Bank was satisfied with the pledge of Rice's assets as security for the loan because of the long relationship which the Bank had enjoyed with Rice. In spite of this fact, Bradfield stated that Rice had insisted that CORDEK be a signatory to the note. Thus, in August 1986, CORDEK and Rice obtained a loan from the Bank in the amount of 1.1 million dollars, which was used to purchase various securities. The securities were sold within days and the proceeds transferred to CORDEK's account. No part of the proceeds was ever used in repayment of the loan.

On January 17, 1987, involuntary Petitions were filed against the three BAKER & GETTY corporate entities. The Petitions were not contested, and Orders for Relief were entered on February 18, 1987. On May 26, 1987, the Court entered an Order substantively consolidating the estates of the three corporate debtors. The Order was entered without objection by any party in interest.

On April 9, 1987, the Petitioning Creditors filed a Motion seeking to join PHILIP CORDEK and SUZAN BIERMAN COR-DEK as affiliates in this action. Once again, the Motion was not opposed by any party in interest, and an Order joining them as affiliates was entered on April 28, 1987.

On May 22, 1987, the instant Motion for substantive consolidation was filed. The relief sought is not opposed by PHILIP and SUZAN CORDEK. In fact, the only party opposing the Motion is the Bank. The Bank claims that if the Motion is sustained, the Bank will be severely prejudiced because the payments received in partial satisfaction of the loan (approximately Two Hundred Thousand & 00/100 Dollars ($200,000.00)) and the perfection of security interests in certain of CORDEK's property might be deemed to be within the 90–day preference period established by 11 U.S.C. Sec. 547, since these transactions took place within 90 days of the involuntary filings against the corporate entities.

## LAW

Substantive consolidation is the merger of separate entities into one action so that the assets and liabilities of both parties may be aggregated in order to effect a more equitable distribution of property among creditors. The authority to order such consolidation arises from the Court's equity jurisdiction pursuant to 11 U.S.C. Sec. 105(a), which provides in part:

a) the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this Title.

*In re Richton Int'l. Corp.*, 12 B.R. 555, 557 (Bankr.S.D.N.Y.1981). Furthermore, substantive consolidation must be cautiously applied in order to prevent the potential for impairment of important substantive rights

of the creditors of the non-debtor entity. *In re Snider*, 18 B.R. 230, 234 (Bankr.D. Mass.1982); *In re DRW Property Co. 82*, 54 B.R. 489, 494 (Bankr.N.D.Tex.1985).

■ The propriety of ordering substantive consolidation is determined by a balancing of interests. The relevant inquiry asks whether "the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition." *Holywell Corp. v. Bank of N.Y.*, 59 B.R. 340, 347 (Bankr.S.D.Fla.1986). In *In re Vecco Construction Ind., Inc.*, 4 B.R. 407, 410 (Bankr.E.D.Va.1980), a seven-factor test was developed to assist in the application of the balancing process. *Id.* at 410. This test has met with considerable support in those courts which have considered the question of substantive consolidation. *Holywell Corp. v. Bank of N.Y., supra; In re DRW Property Co. 82, supra; In re Donut Queen*, 41 B.R. 706, 709 (Bankr.E.D.N. Y.1984). While the test is normally applied to related corporations, it can still offer some focus in the balancing of equities in this case. The seven factors consist of:

1. difficulty in segregating assets;
2. presence of consolidated financial statements;
3. profitability of consolidation at a single location;
4. commingling of assets and business functions;
5. unity of interests in ownership;
6. existence of intercorporate loan guarantees; and
7. transfer of assets without observance of corporate formalities.

*In re Vecco Construction Ind. Inc.*, 4 B.R. at 410.

■ The Court is strongly persuaded that adequate cause exists to order that the CORDEKs' estate be substantively consolidated with the estate of the Corporate Debtors. The extensive and unrestricted commingling of corporate and personal assets, combined with the inadequate substantiation of certain transfers, would compromise the accuracy of any segregation of assets. Furthermore, many major assets owned by the CORDEKs were purchased with corporate funds. Equity demands the inclusion of these assets in the Corporate Debtors' estate. It would be unfair to insulate these assets from claims of the Corporate Creditors because of the corporate fiction. This is especially true where, as here, the funds were transferred without adhering to corporate formalities. As the sole-required signatory on all corporate accounts, Mr. Cordek also exercised pervasive control over the financial affairs of all debtors. It is abundantly clear from the totality of facts in this proceeding that the Debtor Corporations are the alter ego of PHILIP and SUZAN CORDEK. Accordingly, it is clear that substantive consolidation would be desirable in this case.

However, this interest must be balanced against the potentiality for prejudice to the CORDEKs' personal creditors. Most of the major creditors of the CORDEKs are also creditors of the Corporate Debtors. After notice and an opportunity for a hearing, neither the creditors of the Corporate Debtors nor the CORDEKs voiced any objection to the proposed consolidation. The only objection was filed by THE FIRST NATIONAL BANK OF BARNESVILLE ("Bank"), which contended it would be prejudiced by such a consolidation because it had relied on CORDEK's individual assets in approving the loan to he and Rice. However, according to uncontroverted testimony, the Bank relied wholly on Mr. Rice's assets and reputation and not on Mr. Cordek's assets or reputation in approving the August, 1986 loan. It is only now that the Bank declares their reliance on Mr. Cordek's personal assets. Furthermore, the Bank's actions fail to validate their claim of reliance on CORDEK's individual assets. The Bank failed to: (1) timely perfect its liens; (2) perform an adequate title search; or (3) conduct a sufficient credit investigation of Mr. Cordek. The Bank's failure to take these actions is inconsistent with their alleged dependence upon Mr. Cordek's assets. Thus, the Bank will not suffer severe prejudice from a consolidation order since there is no showing it relied on CORDEK's assets in consenting to the loan.

However, even if the Bank were deemed to be prejudiced by the consolidation, the Corporate Creditors appear to be similarly situated, making it equitable to treat them the same. The advantages of consolidation outweigh any prejudice the Bank might experience.

The possibility of prejudice to other personal creditors of the CORDEKs is more problematical. The personal creditors of the CORDEKs must have notice and an opportunity to be heard. However, both notice and the opportunity for hearing can be accorded these creditors in the context of the consolidated proceeding.

Therefore, the Court grants the Motion for consolidation and the claims of any creditors, who can prove reliance on the consolidatee's assets or credit, will be resolved in the consolidated proceedings.

IT IS SO ORDERED.