In re PARKWAY CALABASAS
LTD., Debtor.

In re Marc H. SIEGAL, Debtor.

In re GRANADA CALABASAS
LTD., Debtor.

In re CALABASAS BUSINESS PARK,
PHASE I LTD., Debtor.

In re NORTH COUNTY PLACE,
LTD., Debtor.

David A. GILL, Trustee, Plaintiff,

v.

SIERRA PACIFIC CONSTRUCTION,
INC., Defendant.

Bankruptcy Nos. CA 84–07435 SB, LA
84–07436 SB, LA 84–09002 SB to LA
84–09004 SB.

United States Bankruptcy Court,
C.D. California.

Aug. 12, 1988.

David Weinstein, Danning, Gill, Gould, Diamond, and Spector, Los Angeles, Cal., for debtor.

Michael Schwartz, Augora Hills, Cal., for Sierra Pacific Constructors.

## OPINION DISMISSING FRAUDULENT CONVEYANCE PROCEEDING

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This adversary proceeding presents the issue of whether a fraudulent conveyance cause of action is rendered moot by the substantive consolidation of two bankruptcy cases, where the fraudulent conveyance arises from one debtor's pre-petition payment of a debt that was owed by the other.

The Court holds that the fraudulent conveyance cause of action disappears with the substantive consolidation, and that this adversary proceeding must be dismissed.

### II. FACTS

#### A. *Background*

This bankruptcy case began with the filing of involuntary Chapter 7 petitions on March 30, 1984 against Parkway Calabasas, Ltd., a limited partnership, Marc H. Siegal and his brother Mitchell Siegal. On May 1, 1984 involuntary Chapter 7 petitions were filed against the related limited partnerships Granada Calabasas, Ltd. ("Granada"), Calabasas Business Park Phase I,

Ltd. ("Phase I"), and North County Place, Ltd. On May 14, 1984, all of these cases except that against Mitchell Siegal were converted to cases under Chapter 11, and David A. Gill was appointed as the Chapter 11 trustee for each debtor. The Mitchell Siegal case was subsequently dismissed. The five Chapter 11 cases were substantively consolidated by an order entered February 27, 1987, almost three years after the filings. David Gill remains the trustee for the consolidated cases.

Prior to the filing of the bankruptcy cases, the prior debtors were engaged principally in the business of constructing and developing office buildings, shopping centers and residences in Southern California. The principals behind this business were Marc and Mitchell Siegal. The business was conducted through a number of limited partnerships and corporations with interlocking ownerships.[1] No other natural person held any ownership interest in any of these entities.

There was approximately one entity for each parcel of real property under development. However, funds, real estate, and ownership interests were transferred back and forth to such an extent that the Chapter 11 trustee found it virtually impossible to determine the precise ownership of each of the properties involved in these bankruptcy cases.

This ownership problem came to light when counsel for the trustee brought an interim fee application before the Court. While the supporting time records had been segregated for each real estate project, counsel was not able to identify which debtor should be charged for which services. The Court denied interim fees until this issue was resolved. The resolution was provided by the substantive consolidation of all of the cases pursuant to a motion brought by Marc Siegal. Neither the trustee[2] nor any other party in interest[3] op-

---

1. A question arises as to whether the related entities that have not filed bankruptcy cases should be required to participate in these consolidated cases. However, no party in interest has brought this issue before the Court.

2. In paragraph B of his "non-opposition," the trustee stated:

Nothing herein should be taken to affect or prejudice the trustee's rights in connection with pending or future avoidance litigation

posed the motion for substantive consolidation, or sought any qualifications on the order of consolidation.

The consolidated estate is insolvent. Apparently each of the separate estates was also insolvent prior to consolidation.

and the trustee does not intend to nor does he by this statement of non-opposition, waive any rights resulting from payments previously made by one debtor entity on behalf of other.

3. One surprising feature of motions for substantive consolidation is the lack of opposition to such motions by unsecured creditors. This Court has entertained a number of such motions, and cannot recall a single instance where any opposition was voiced. No opposition was raised in this case. Perhaps the lack of opposition results from the fact that motions for substantive consolidation tend to be made after the cases have been pending for some time, and the unsecured creditors may have lost interest and given up hope for a substantial dividend.

It appears to the Court, however, that there are often more sinister explanations for the lack of opposition to a motion for substantive consolidation. While the unsecured creditors may have lost interest, the respective committees of unsecured creditors (if they are active) and their counsel should be actively involved in the process, and looking out for the interests of the disillusioned unsecured creditors. The respective trustees and their counsel should likewise be scrutinizing a substantive consolidation motion for fairness to the respective groups of unsecured creditors.

None of these parties typically raises any concern about the possible prejudicial effects of substantive consolidation. The reason is that there is typically (as in this case) a single trustee, a single attorney or law firm representing the trustee (or the debtor, if the cases are under Chapter 11 and the debtor is in possession), a single committee of unsecured creditors, and a single attorney or law firm representing the committee.

Where there are no separate trustees, creditors' committees or counsel, each has a hopelessly irresolvable conflict of interest on a motion for substantive consolidation. *See* 5 *Collier on Bankruptcy* ¶ 1100.07 (15th ed. 1988), at 1100–50. Each is required to support the substantive consolidation for the benefit of the less solvent estate and its creditors, and to oppose it for the benefit of the more solvent estate and its creditors.

Curiously, the professionals do not typically find that this irresolvable conflict immobilizes them on the substantive consolidation issue. In fact, they almost universally support a motion for substantive consolidation. It appears to the Court that this support often arises from the selfish purpose of assuring a fund for the payment of all of their fees, and to avoid the possibility that they will not be paid for the portion

## B. *This Adversary Proceeding*

Defendant Sierra Pacific Constructors, Inc. ("Sierra Pacific") held a mechanic's lien on property belonging to Phase I, resulting from tenant improvements that Sierra Pacific provided in an office building of their work performed for an administratively insolvent estate.

As a penalty for this incurable conflict, the Court has the power to reduce the compensation awarded to professionals, or to deny it altogether. However, this does not solve the problem of inadequate representation of parties with differing interests in the substantive consolidation motion. It is also not fair to the professionals to appoint them in circumstances where the diligent prosecution of their duties will embroil them in such conflicts and expose them to a loss of fees.

It appears to the Court that the only reasonable point to obtain a mechanical advantage on this problem is at the outset of the case, when the trustee, the creditors' committees and counsel are appointed.

Accordingly, this Court adopts the presumption that it is improper to appoint (1) a single trustee, (2) a single creditors' committee, or (3) the same counsel for the trustees, for the creditors' committees or for the debtors-in-possession under the following circumstances:

(a) Where creditors of the debtors have dealt with such debtors as an economic unit (which may be reflected in guaranties and subordination agreements);

(b) Where the affairs of the respective debtors (as reflected in inter-debtor accounts, jointly owned assets, guarantees, subordination agreements, or shared officers, directors or owners) appear to be substantially entangled;

(c) where assets have been transferred from one debtor to another in transactions that are not at arms length;

(d) where piercing of the corporate veil of one of the debtors is necessary or advisable to protect the rights of creditors of another debtor.

The foregoing procedures were not in place for these consolidated cases. Even if they were, these cases most likely would have required substantive consolidation, because of the uncertainty of ownership interests.

Professionals seeking appointment under section 327 are required to disclose any such factors in their applications for appointment. Any professional seeking to rebut the presumption may do so only after a hearing on notice to all creditors in each of the related cases, in which the professional will have a heavy burden to carry in showing the inequity of requiring separate professionals. The notice must be adequate to inform the creditors that the appointment may result in conflicts of interest and a lack of adequate representation of the interests of the respective bodies of unsecured creditors.

belonging to Phase I. Sierra Pacific received a $155,000 payment on March 2, 1984, within 90 days before the second group of bankruptcy cases was filed, in compromise of a bill for $178,438 that supported the lien. The Court assumes without deciding that the funds for this payment resulted from the refinancing of real property belonging to Granada.

The trustee has attacked this transaction as a fraudulent conveyance, on the grounds that Granada did not receive adequate consideration for its payment of a debt owing by Phase I. The trustee also filed some 12 to 15 other fraudulent conveyance adversary proceedings arising from similar facts.

The trustee brought a summary judgment motion in one of the related adversary proceedings, *Gill v. R.T. Frankian & Associates*, seeking judgment in his favor on essentially similar facts. Because the same issue was raised in several adversary proceedings, the Court consolidated them for summary judgment hearings on this issue. In the interim, the Court has disposed of the other consolidated adversary proceedings, including *Frankian*, on other grounds. Thus the summary judgment motion on this issue remains only in this adversary proceeding.

## III. ANALYSIS

The trustee argues that his fraudulent conveyance causes of action were preserved after the substantive consolidation, because the consolidation was prospective only, and not *nunc pro tunc*. In support of this argument the trustee relies upon *Drabkin v. Midland–Ross Corporation (In re Auto–Train Corporation)*, 810 F.2d 270 (D.C.Cir.1987). The trustee argues that, if the Court rules that substantive consolidation destroys pending fraudulent conveyance actions in which one consolidated debtor has paid the debt of another consolidated debtor, Sierra Pacific will receive a windfall and thereby be rewarded for sustaining the fraudulent conveyance proceeding until after the consolidation order. A danger would then arise, the trustee argues, that all fraudulent conveyance defendants in cases with similar facts would be motivated to avoid settlement, trial or other disposition before the consolidation issue is resolved.

This argument is based on a misunderstanding of the nature and consequences of substantive consolidation, and a misunderstanding of the nature of a fraudulent conveyance.

### A. *Substantive Consolidation*

Substantive consolidation and joint administration are two different procedures available to a bankruptcy court to link two or more related bankruptcy cases. Joint administration, also known as administrative consolidation or procedural consolidation, is common for cases involving two or more affiliated corporations or other related entities that have filed bankruptcy cases. Joint administration typically involves the appointment of a single trustee to administer the related cases, the maintenance of a single case file, claims register, and docket in the clerk's office, and the combining of notices concerning the estate. *See* advisory committee note to Bankruptcy Rule 1015 (1983). The negotiation of a plan of reorganization, after joint administration has been ordered, involves not only the consideration of claims by outsiders, but also the claims of the debtors *inter sese*.

The purpose of joint administration is to make case administration easier and less expensive than in separate cases, without affecting the substantive rights of creditors (including inter-debtor claims). There is no merging of assets and liabilities of the debtors, and inter-entity claims survive. Creditors of each debtor continue to look to that debtor for payment of their claims. The respective debtors are required to maintain separate banking and accounting records. Any professionals appointed in more than one related case must keep separate time and expense records, and must make separate applications for employment and for compensation.

Substantive consolidation has a far different impact on the rights of the debtor and creditors. Its nearest non-bankruptcy analogy is the merger of two corporations under state law. In place of two or more debtors, each with its own estate and body

of creditors, substantive consolidation substitutes a single debtor, a single estate with a common fund of assets, and a single body of creditors. *Chemical Bank New York Trust Company v. Kheel (In re Seatrade Corporation)*, 369 F.2d 845, 847 (2d Cir.1966); *In re Baker & Getty Financial Services, Inc.*, 78 B.R. 139, 141 (Bankr.N.D. Ohio 1987); *In re W.T. Grant Co.*, 4 B.R. 53, 73 (Bankr.S.D.N.Y.1980), *aff'd*, 20 B.R. 186 (S.D.N.Y.1982). Assets and liabilities of each entity are pooled and inter-entity accounts and claims are eliminated. Creditors of the separate entities become creditors of the consolidated entity. Duplicative claims by creditors, uncertain as to which debtor owes their debts, are eliminated. *See generally*, 5 *Collier on Bankruptcy* ¶ 1100.06 (15th ed. 1988); Seligson & Mandell, "Multi-Debtor Petition—Consolidation of Debtors and Due Process of Law," 73 Comm.L.J. 341 (1968).

The Bankruptcy Code and the Bankruptcy Rules are both silent on the subject of substantive consolidation. The advisory committee note to Bankruptcy Rule 1015(b), which provides for joint administration, states:

> This rule does not deal with the consolidation of cases involving two or more separate debtors. Consolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates.

■ Substantive consolidation is entirely a creature of court-made law. The bankruptcy court's power of substantive consolidation results from its general equitable powers granted in Bankruptcy Code § 105(a), 11 U.S.C. § 105(a) (Supp.1988), which provides in part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Baker &*

*Getty Financial Services, Inc.*, 78 B.R. 139, 141 (Bankr.N.D.Ohio 1987).

■ Substantive consolidation was given tacit approval by the United States Supreme Court in *Sampsell v. Imperial Paper & Color Corporation*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941),[4] where the Supreme Court held that a corporation's creditor, that had participated in its formation and the fraudulent conveyance of the debtor shareholder's assets to the corporation, had no priority to payment from separate corporate assets.

■ The bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on the substantive consolidation. Where, for example, property subject to a security interest would be enlarged by substantive consolidation (e.g., "all accounts receivable"), the court may qualify the consolidation to protect unsecured creditors. *See, e.g., James Talcott, Inc. v. Wharton (In re Continental Vending Machine Corp.)*, 517 F.2d 997, 999 (2d Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). The court may order consolidation with respect to unsecured claims, and leave the cases unconsolidated with respect to secured claims. *See In re Pittsburgh Rys. Co.*, 155 F.2d 477, 484–85 (3d Cir.1946), *cert. denied*, 329 U.S. 731, 67 S.Ct. 89, 91 L.Ed. 632 (1946). Where property subject to a security interest would disappear, such as stock in a subsidiary to be substantively consolidated with a parent corporation, the secured creditor is entitled to have the security valued and to receive an appropriate priority in a reorganization plan. *FDIC v. Hogan (In re Gulfco Investment Corporation)*, 593 F.2d 921, 927 (10th Cir.1979); *Flora Mir Candy Corporation v. R.S. Dickson & Co. (In re Flora Mir Candy Corporation)*, 432 F.2d 1060, 1063 (2d Cir. 1970). Appropriate segregation of accounts may be required to give effect to one entity's guaranty of another's debt.

---

**4.** Many of the leading cases on substantive consolidation arose under the Bankruptcy Act of 1898, 30 Stat. 544 (repealed 1978). There is no provision in the Bankruptcy Code on substantive consolidation. In addition, the Court perceives no policy of the Bankruptcy Code that would change the prior law on substantive consolidation. In consequence, the prior cases continue to be good law, subject to any more recent case law.

*Gulfco Investment Corporation, supra,* at 927–28; 5 *Collier on Bankruptcy* ¶ 1100.06, at 1100–43 n. 32 (15th ed. 1988). As Justice Douglas stated for a unanimous Supreme Court in *Sampsell v. Imperial Paper & Color Corporation,* 313 U.S. 215, 219, 61 S.Ct. 904, 85 L.Ed. 1293 (1941), "The power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the [corporation's and shareholder's] creditors is complete."

However, in this case no conditions or qualifications on the substantive consolidation were imposed.

### B. *Fraudulent Transfer*

Two kinds of fraudulent transfer transactions are prohibited by Bankruptcy Code § 548:[5] a transfer made or obligation incurred (1) with actual intent to hinder, delay, or defraud a creditor, or (2) for which the debtor received less than a reasonably equivalent value, which left the debtor insolvent or nearly so. The trustee bases his case in this adversary proceeding on the constructive fraudulent conveyance branch, and contends that the transaction left Granada insolvent.

The purpose of this branch of fraudulent transfer law is to protect the asset base of a debtor for the benefit of unsecured creditors who lend on the general financial strength of the borrower. It prevents a debtor from giving away the debtor's assets, or selling or encumbering them for less than fair equivalent value, where such a transfer would imperil the ability of the debtor to repay the debtor's unsecured debts.

The vice of this kind of fraudulent transfer is that it perpetrates a wrong on the unsecured creditors of the transferor, by transferring away assets to which the creditors could otherwise look for payment of their claims. If the transfer leaves the debtor insolvent, or nearly so, the creditors' ability to obtain payment is jeopardized. The party who receives the transfer or that is benefited by it, in contrast, receives an unjust enrichment.

Unlike preference law, which applies only in the collective debt administration procedures of bankruptcy, fraudulent transfer law policies the relationship between debtor and creditor outside of bankruptcy as well. *See* T. Jackson, *The Logic and Limits of Bankruptcy Law* 146–50 (1986). Bankruptcy Code § 544(b)[6] gives a trustee the right to pursue any fraudulent transfer remedies available to an unsecured creditor under state law. In addition, the Bankruptcy Code contains its own fraudulent transfer provision in section 548, which the trustee has involved in this adversary proceeding.

The Court assumes without deciding that, absent substantive consolidation, the trustee can show that the payment to Sierra Pacific was fraudulent as to the creditors of Granada, because it deprived the

---

**5.** Section 548(a), 11 U.S.C. § 548(a) (1979 & Supp.1988), provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

**6.** Section 544(b), 11 U.S.C. § 544(b) (1979), provides:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Granada estate of $155,000 within 90 days of the filing of its bankruptcy petition. The Court also assumes without deciding that the trustee can show that the transfer benefitted the creditors of Phase I by removing a $155,000 claim against the Phase I estate.

## C. *Impact of Substantive Consolidation on Fraudulent Transfer Claims*

■ Because fraudulent transfer law is not based on bankruptcy law, the impact of substantive consolidation on a fraudulent transfer must first be assessed outside of the bankruptcy context.

Absent a bankruptcy case for either Phase I or Granada, a Granada creditor would have a right under California law to challenge Granada's payment of a debt owing by Phase I on the grounds that the payment was a fraudulent transfer, because it left Granada insolvent. The gravamen of such a claim would be that after the transfer it would be difficult or impossible for Granada to pay its creditors, while Phase I would be unjustly enriched by the payment of its debt with Granada's funds.

The merger of Granada and Phase I would eliminate both the harm to Granada's creditors and the unjust enrichment to Phase I. The harm to Granada's creditors would be eliminated because the asset pool available to pay them would be increased by the addition of the Phase I assets to the pool. In particular, the enrichment to Phase I resulting from Granada's payment of its debt would be included in this increase. Phase I would no longer be unjustly enriched, because Granada's creditors could then look to the assets of Phase I for payment.

The filing of bankruptcy cases for Granada and Phase I does not change this merger analysis. Substantive consolidation accomplishes the merger of the two estates, leaving no party unjustly enriched and no creditors looking to an impoverished asset pool for payment.

The trustee argues that the Court's analysis depends on a finding that Phase I and Granada are alter egos of each other, and that substantive consolidation in this case was not based on such a finding. No

alter ego consolidations are required for the Court's conclusion in this adversary proceeding.

■ The Court perceives no impact of this decision on other adversary proceedings in this case raising the same issue. Some have been resolved by the Court on other grounds. The trustee's settlement of others is not brought into question by this decision: one of the benefits that the settling defendants compromised away was the possibility that the Court would rule in their favor on the issues of law that could be raised.

### D. *Nunc Pro Tunc Consolidation*

■ No issue of *nunc pro tunc* consolidation arises in this case, and the trustee's reliance on *Drabkin v. Midland–Ross Corporation (In re Auto-train Corporation)*, 810 F.2d 270 (D.C.Cir.1987), is misplaced. A *nunc pro tunc* order is one that is given effect as of a date prior to that on which it is entered. Its principal purpose is to establish rights as they would have been if the order had been entered on the prior date. Its most common use in bankruptcy is to rectify the tardy appointment of counsel under Bankruptcy Code § 327, to permit counsel to be paid for the interim period before the order is entered. *See, e.g., Okamoto v. THC Financial Corporation (In re THC Financial Corp.)*, 837 F.2d 389, 392 (9th Cir.1988); *In re Arkansas Company*, 798 F.2d 645, 647–51 (3d Cir. 1986).

*Auto-train* involved a motion granted by the bankruptcy court to amend a bankruptcy petition to add a subsidiary of the debtor as an additional debtor in the bankruptcy case, as of the date of the case filing. Prior to the bankruptcy court order the subsidiary was not a debtor in bankruptcy at all. The trustee then used the retroactive filing by the subsidiary to attack a transaction with the subsidiary as a preferential transfer, because it was within 90 days of the original filing by the parent. The circuit court held that a *nunc pro tunc* order could be granted only in the absence of prejudice to any party, and that the

prejudice to the creditor, whose 90–day preference period had run as to the subsidiary, made the order invalid.

The question in *Auto-train* that was resolved by the courts *nunc pro tunc* analysis was the effective date of the filing of the bankruptcy case for the subsidiary. This determination impacted the running of the preference period under Bankruptcy Code § 547, numerous statutes of limitations, and other rights under the Bankruptcy Code. In addition, it threatened to convert certain pre-petition transactions into post-petition transactions for the subsidiary. None of these issues arise in this case.

A *nunc pro tunc* issue would arise in this case if the Phase I bankruptcy case had not been filed until after May 31, 1984 (or not at all), after the 90 days had run on the preference period for Sierra Pacific's payment. An attempt to revive a preference claim against Sierra Pacific by consolidation with the earlier-filed Granada case would violate the *Auto-train* rule.

■■■ The Phase I bankruptcy case was filed within the 90–day preference period as to the Sierra Pacific payment. However, the payment is not subject to attack as a preference because it involved a payment of a secured debt.

In this case the trustee seeks something quite different. Instead of the avoidance of retroactive effect, he seeks in effect a partial revocation of the substantive consolidation.

Substantive consolidation cannot be split up in the manner sought by the trustee. The substantive consolidation has removed the separation between the Granada creditors and the Phase I creditors. They are now part of a single body of unsecured creditors that will share in the assets of the consolidated estate. This combined body of creditors was not prejudiced by the $155,000 payment, because it also received the benefit of the elimination of the $155,000 claim. The impact was exactly the same as it would have been if Granada had paid its own creditors with the $155,000.

Partial substantive consolidation is not available to attain the trustee's objectives.

The only way to preserve a class of unsecured creditors that is harmed by the transfer here at issue is to hold the creditors of Granada and the assets of its estate separate from those of Phase I. In short, the result sought by the trustee could be achieved only if substantive consolidation had been denied.

## IV. *Conclusion*

The Court concludes that the substantive consolidation of Phase I and the Granada bankruptcy cases, together with the other cases herein, creates a single case, a single estate, and a single body of creditors. It also creates a single debtor, insofar as the bankruptcy case is concerned. It is functionally very similar to its corporate analogue, the merger of two corporations.

In consequence of the substantive consolidation, the joint class of unsecured creditors that is prejudiced by the transfer alleged in the adversary proceeding is the same class that received the benefit of the elimination of the $155,000 claim by Sierra Pacific. Thus judgment must be awarded to Sierra Pacific.

The foregoing constitutes the Court's findings of fact and conclusions of law. Counsel for defendant is directed to submit a judgment in conformity with the opinion of the Court.