FRIEDLAND, Circuit Judge, concurring: I agree that 11 U.S.C. § 1111(b)(2) does not require that a bankruptcy plan include complete due-on-sale protection for the creditor. And although I think the statutory language is somewhat ambiguous, I further agree that the better reading of 11 U.S.C. § 1129(a)(10) is that it applies on a “per plan,” rather than “per debtor,” basis. I write separately, however, to acknowledge the argument advanced by JPMCC 2007-C1 Grasslawn Lodging, LLC (“Lender”) that it was unfairly deprived of the ability to object effectively to reorganization of the Mezzanine Debtors, despite being their only creditor. While Lender’s concern is not unfounded, I believe any unfairness resulted not from the interpretation of § 1129 that Lender challenged in this appeal, but instead from the fact that this particular reorganization treated the five Debtor entities as if they had been substantively consolidated—something Lender did not object to in the bankruptcy court. Joint administration and substantive consolidation are both mechanisms to facilitate multi-debtor reorganizations. Joint administration is a tool of convenience; “[tjhere is no merging of assets and liabilities of the debtors,” and “[creditors of each debtor continue to look to that debtor for payment of their claims.” In re Parkway Calabasas Ltd., 89 B.R. 832, 836 (Bankr. C.D. Cal. 1988). By contrast, substantive consolidation replaces “two or more debtors, each with its own estate and body of creditors,” with “a single debtor, a single estate with a common fund -oí assets, and a single body of creditors.” Id. at 836-37; see also In re Bonham, 229 F.3d 750, 764 (9th Cir. 2000). Accordingly, “consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates.” In re Bonham, 229 F.3d at 762 (quoting Fed. R. Bankr. P. 1015 advisory committee’s note). Here, the cases of the five Debtors were jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015, but neither party moved for substantive consolidation. Nevertheless, I think Lender is correct that the distribution scheme adopted by the Plan involved a degree of substantive consolidation. Debtors’ respective bankruptcy estates may technically have remained separate, but the Plan treated Debtors as a single entity. Specifically, by subordinating the Mezzanine Loan claims to the Operating Loan claims, the creditors for different Debtors all drew from the same pool of assets. And had the Mezzanine Lender voted to accept the Plan, its claims would have been paid from the assets of the reorganized Operating Debtors, demonstrating that the Plan did not differentiate based on the recipient of a particular creditor’s loan. As the bankruptcy court itself explained, this arrangement treated the Mezzanine Lender’s claims as if the cases had been substantively consolidated. In many cases involving a reorganization plan that effectively merges the assets and liabilities of multiple debtors, “the constituents in the chapter 11 proceeding either reach this result by consensus, or, no objection is made by any creditor or party in interest.” In re Tribune, 464 B.R. 126, 183 (Bankr. D. Del. 2011). The plan can thus proceed under a “de facto” substantive consolidation, absent a formal assessment of whether substantive consolidation is appropriate. Here, however, two classes of creditors objected to the Plan: (1) the class consisting of Lender’s secured claim, which arose from the mortgage loan secured by the resorts, and (2) the class consisting of the secured and unsecured mezzanine claims, which arose from the mezzanine loan originally provided by Ash-ford Hospitality Finance, LP, and subsequently purchased by Lender. Because there was no consensus over these bankruptcy proceedings, there should have been an evaluation of whether substantive consolidation was appropriate before it (effectively) occurred. To determine whether substantive consolidation is appropriate, a bankruptcy court evaluates “(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors.” FDIC v. Colonial Realty Co., 966 F.2d 57, 61 (2d Cir. 1992) (quoting In re Augie/Restivo Baking Co., Ltd., 860 F.2d 515, 518 (2d Cir. 1988)) (internal quotation marks omitted); see also In re Bonham, 229 F.3d at 766 (adopting the Second Circuit’s test for substantive consolidation). The “sole aim” of this analysis is “fairness to all creditors.” In re Bonham, 229 F.3d at 765 (quoting Colonial Realty, 966 F.2d at 61). Assessing whether substantive consolidation was appropriate here would thus have required the bankruptcy court to consider whether consolidation was fair to Lender, among other creditors. According to Lender, its treatment under the Plan was unfair, and the root of the potential unfairness is that § 1129(a)(10) was interpreted as applying on a “per plan,” rather than a “per debt- or,” basis. Section 1129(a)(10) requires that at least one impaired class of creditors accept a plan in order for it to be confirmed. Under the “per plan” approach, this provision was satisfied here as soon as any one impaired class from any of the five Debtors accepted the Plan. But if this provision had been applied on a “per debt- or” basis, then one impaired class for each of the five Debtors would have had to accept the Plan. Because Lender was the only creditor for the Mezzanine Debtors following its purchase of the mezzanine claims, under the “per debtor” interpretation of § 1129(a)(10) Lender’s objection would have prevented the Plan from being confirmed. Lender argues that use of the “per plan” approach had the same effect as substantive consolidation because one impaired class of creditors for one Debtor was able to bind all of the involved creditors, nullifying the leverage Lender would have otherwise had in the confirmation process under the “per debtor” approach. Lender thus characterizes the “per plan” approach as “de facto” substantive consolidation. But this characterization is correct only to the extent that the “per plan” approach allowed for confirmation of a Plan that effectively merged the Debtor entities. The root of Lender’s objection is that the reorganization here was governed by a single plan that did not delineate among separate debtor-creditor relationships. Had the Debtors—and thus their reorganization plans—remained separate, there would have been no need to invoke the “per debtor” approach to preserve the effectiveness of any objection Lender had. Although Lender’s “per debtor” interpretation would have allowed Lender to object and thereby block confirmation of the Plan, the problem in my view is not the interpretation of the statute, but rather that the Plan effectively merged the Debtors without an assessment of whether consolidation was appropriate. Such an assessment would have required the bankruptcy court to evaluate whether it was fair to proceed on a consolidated basis. In re Bonham, 229 F.3d at 765. Had the court taken this step of “balanc[ing] the benefits that substantive consolidation would bring against the harms that it would cause,” id., it might have alleviated concerns about whether consolidation of the proceedings was in fact unfair. Given that Lender ásserts now that de facto substantive consolidation was inappropriate, it is unclear why Lender did not challenge the Plan on that basis prior to confirmation. It is possible that, if there had been an objection raising the question, Debtors’ single-purpose entity structure would have defeated any request for substantive consolidation. The original loan documents required maintaining the Operating Debtors and the Mezzanine Debtors as separate entities. As a result, the bankruptcy court might have concluded that creditors treated Debtors as separate entities, and further that the special-purpose entity structure prevented their assets from becoming entangled—thus rendering substantive consolidation unavailable under this circuit’s test. See id. at 765-66. If so, the court could have required altering the distribution scheme to maintain entity separateness, thus preserving Lender’s leverage over the Plan. If, however, the bankruptcy court had instead determined that this case was a candidate for substantive consolidation, then an appeal of that determination would have involved an evaluation of this particular Plan on its facts and resulting equities—rather than a challenge to the interpretation of a statute that governs all Chapter 11 reorganizations. But because Lender focused solely on the statute, the substantive consolidation objection is now waived. In sum, I am not unsympathetic to Lender’s argument that it was deprived of an opportunity to object to confirmation of the Plan, and I have concerns that entangling various estates in a complex, multi-debtor reorganization diminishes the protections afforded to creditors by the Bankruptcy Code. But I do not believe bolstering these protections requires the blanket statutory solution that Lender proposes. Rather, if a creditor believes that a reorganization improperly intermingles different estates, the creditor can and should object that the plan—rather than the requirements for confirming the plan—results in de facto substantive consolidation. Such an approach would allow this issue to be assessed on a case-by-case basis, which would be appropriate given the fact-intensive nature of the substantive consolidation inquiry. See In re Bonham, 229 F.3d at 765 (“[O]nly through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors.” (quoting Colonial Realty, 966 F.2d at 61)).