In re **STANDARD BRANDS PAINT COMPANY, a Delaware Corporation; Standard Brands Paint Co., a California Corporation; Major Paint Company, a California Corp.; Zynolyte Products Company, a California Corporation; and Standard Brands Realty Co., Inc., a California Corporation, Debtors.**

Bankruptcy Nos. LA 92–15505–KM, LA 92–15521–KM to LA 92–15524–KM.

United States Bankruptcy Court, C.D. California.

May 13, 1993.

K. John Shaffer, Stutman, Treister & Glatt, Los Angeles, CA.

OPINION GRANTING SUBSTANTIVE
CONSOLIDATION OF ESTATES
OF FIVE DEBTORS

## I.  *FACTS*

KATHLEEN P. MARCH, Bankruptcy Judge.

The present motion to substantively consolidate involves the following undisputed facts:

### A.  All Five DIPs Have Always Operated as a Consolidated Entity

There are five Chapter 11 debtors involved in this motion, all of them corporations.  All five are debtors in possession. These are Standard Brands Paint Company, a Delaware corporation; Standard Brands Paint Co., a California corporation; Major Paint Company, a California corporation; Standard Brands Realty Co., Inc., a California corporation; and Zynolyte Products Company, a California corporation. This motion is a core proceeding.

Debtor Standard Brands Paint Company, a Delaware Corporation (hereinafter "SBP"), is the parent corporation.  Parent

SBP is a publicly traded company. Debtors Standard Brands Paint Co., Major Paint Co., Standard Brands Realty Co., and Zynolyte Products Company are wholly owned direct and indirect subsidiaries of debtor SBP.

In addition to the four debtor subsidiaries, SBP has four additional wholly owned direct and indirect subsidiaries which are not in bankruptcy. These nondebtor subsidiaries are The Art Store, a California corporation; SBP Leasing Company, a Nevada corporation; SBP Transportation Company, Inc., a California corporation; and Promark Group West, a Nevada corporation.

Collectively, debtors are one of the largest manufacturers, distributors and retailers of paint and paint related merchandise in the Western United States. Debtor SBP's only function is being the holding company for its various subsidiaries. (Declaration of Dan Bane). Debtors are vertically integrated. With some overlap, debtors operate as follows: Debtor subsidiary Paint Co. operates retail paint and paint-related stores. Debtor subsidiary Major manufactures paint and paint-related items. Debtor subsidiary Zynolyte is the distribution subsidiary for paint manufactured by Major. Debtor subsidiary Realty owns or manages real estate holdings, including those where Paint operates the retail paint stores. (Declaration of Dan Bane).

The evidence on this motion is uncontroverted that the five debtor corporations and the nonfiled subsidiaries have always operated as a consolidated entity, with the subsidiaries and parent all being dependent on each other to make a functional whole. (Declarations of Dan Yukelson and Dan Bane). It is uncontroverted that the debtors have always operated with consolidated financial statements and have always done their reporting to the SEC on a consolidated basis. (Declarations of Dan Yukelson and Dan Bane). The evidence is also uncontroverted that the five debtors have always held themselves out to creditors as being a consolidated entity, and have never given any creditor separate financial information for any single subsidiary. (Declarations of Dan Yukelson and Dan Bane).

The debtors would suffer negative tax effects if the debts between/among the debtors were permanently cancelled. Cancellation of debt would affect debtors' state net operating loss carryovers and their adjusted state tax basis in property. (Declaration of Jeffrey Tolin). Forgiveness of intercompany indebtedness could result in adverse state income tax results (apparently because forgiveness of debt is "phantom" income, though this is not stated expressly). (Declaration of Irving Thau). Similarly, dissolving the four debtor subsidiaries or merging them into the parent could result in adverse tax effects. (Declaration of Jeffrey Tolin).

By previous order, the court administratively consolidated the handling of the five cases, pursuant to Federal Rules of Bankruptcy Procedure Rule 1015.

**B. The Motion for Substantive Consolidation only Requests Consolidation of the Five Debtors' Estates**

By motion filed December 21, 1992, all five debtors in possession (herein after "DIPs") move the court to substantively consolidate their five bankruptcy estates, on the terms described infra this section of this opinion at Subpart D, Items 1–6. The motion only asks to substantively consolidate the estates of the debtor parent SBP and its four debtor direct and indirect subsidiaries. It does not ask to substantively consolidate the nondebtor subsidiaries' assets or liabilities with the estates of the five debtors.

**C. The DIPs' Motion to Substantively Consolidate is Unopposed, and in Fact Supported by All Major Parties**

The five DIPs' motion to substantively consolidate is presently unopposed. Originally there was one objection and one alternative motion. The objection was by CIT Group/Equipment Financing, Inc. (hereinafter "CIT"), a secured equipment lender. The alternative motion was by the Official Creditors' Committee for unsecured credi-

tors, which moved to substantively consolidate the estates of the four debtor subsidiaries, but not the estate of parent SBP. At that time the Creditors' Committee had filed a competing plan of reorganization, calling for only the four subsidiaries' estates to be substantively consolidated. CIT and the Creditors' Committee withdrew their respective objection and alternative motion after all major parties in the case reached agreement on the consensual plan of reorganization which is set for confirmation hearing this date.

At the hearing where the Committee and CIT withdrew their objection to the present motion, the Court questioned counsel for all parties present regarding their clients' positions on the present motion. Through their respective counsel, the Creditors' Committee for unsecured creditors, CIT, the prepetition insurance company lenders (owed over $100 million), the prepetition bank lender (Security Pacific National Bank, now known as Bank of America, NT & SA), the debtors' postpetition lender, and the other parties present all stated on the record that they *support* the present motion. Thus, the motion is not only unopposed, but is supported by all major groups of creditors.

Because the four subsidiary debtors are wholly owned by the parent debtor SBP, there are no "publicly held" shareholders of the subsidiaries to be adversely affected by any consolidation.

### D. What the DIPs are Requesting is Not Normal Substantive Consolidation. It is Substantive Consolidation Modified from What Most Caselaw Calls Substantive Consolidation

The DIPs' motion can most accurately be described as requesting substantive consolidation with a twist. (Debtors' Motion for Substantive Consolidation with declarations, and Debtors' Supplemental Memorandum in Support of Substantive Consolidation). Some of what the debtors request in their motion is "typical", some of what is asked for is unusual, possibly unique. The debtors are requesting substantive consolidation on the following terms:

1. Treat assets of each of the five debtors as being a single estate (typical).[1]

2. Treat all claims (regardless of which of the five debtors the claim is against) as being a claim against the consolidated single estate (typical).

3. Have a single plan of reorganization with all creditors of all five debtors to vote as if they were creditors of the single consolidated estate (typical).

4. Eliminate claims (including guarantees) between/among the five debtors for plan purposes, so that these interdebtor claims are not classified, do not vote, and do not receive any distribution under the plan (typical). Claims between/among the five debtors will be eliminated vis-a-vis the *creditors* and the debtors through the declaration of intercompany dividends and/or capital contributions on the accounts of each of the five debtors as part of substantive consolidation. (Declarations of Jeffrey Tolin and Irving Thau). The net effect of these inter-company dividends and/or capital contributions will be that these interdebtor debts will be eliminated as among the *debtors* as part of substantive consolidation (unusual, maybe unique).

5. Eliminate duplicate claims by the same creditor filed against more than one debtor (typical).

6. Ignore, for plan purposes, the separate corporate structures of the five debtors so that there will be a single plan (typical). However, do not cancel the stock of the four subsidiaries or the parent, and do *not* formally merge the five debtor corporations into one corporation (unusual). After the plan is confirmed the five debtor corporations will still have

---

**1.** For a discussion of what "typically" happens in substantive consolidation, see *F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57, 58 (2d Cir.1992) and see 5 *Collier On Bankruptcy* § 1100.06, at 1100–33, text and footnote 1 (Lawrence P. King, ed., 15th ed. 1991).

their original separate corporate existences (unusual, maybe unique).

## II. *APPLICABLE LAW REGARDING SUBSTANTIVE CONSOLIDATION*

### A. Not Much Express in the Bankruptcy Code about Substantive Consolidation

There is very little express in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure regarding the subject of substantive consolidation. Federal Rules of Bankruptcy Procedure Rule 1015 refers to consolidation of two or more cases for administrative purposes, which is referred to as "joint administration", but does not address the subject of substantive consolidation. (See however the Official Advisory Committee Note (1983) to Rule 1015). The Note distinguishes joint administration from substantive consolidation, and states that substantive consolidation of the estates of two or more separate debtors may be appropriate under some circumstances, "as when the affairs of an individual and a corporation controlled by that individual are so intermingled that the court cannot separate their assets and liabilities."

The only reference in the Bankruptcy Code to consolidation appears in Section 1123(a)(5)(C) of the Code. This section states that a Chapter 11 plan "... shall provide adequate means for the plan's implementation such as—(C) merger or **consolidation** of the debtor with one or more persons ...". 11 U.S.C. § 1123(a)(5)(C) (emphasis added).

### B. Substantive Consolidation is a Caselaw Doctrine

The doctrine of substantive consolidation is a caselaw doctrine which has developed over the years. (See article by Sally Shultz Neely discussing evolution of substantive consolidation caselaw up to 1988, titled "Substantive Consolidation—Historical Development and Contemporary Problems"; Paper published: 62nd Annual Meeting of the Nat'l Conference of Bankruptcy Judges, San Diego, CA (1988)).

The caselaw often refers to Section 105 of the Code (the catch-all section stating

the court can issue orders necessary to carry out the provisions of the Code) as being the source of authority to substantively consolidate. *Gill v. Sierra Pacific Construction, Inc., (In re Parkway Calabasas, Ltd.),* 89 B.R. 832 (Bankr.C.D.Cal. 1988), *affirmed,* 949 F.2d 1058 (9th Cir. 1991); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723 (Bankr.S.D.N.Y. 1992); *F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57 (2d Cir.1992).

Section 105(a) states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (Supp.1993).

In 1940, in a case under the prior Bankruptcy Act, the Supreme Court suggested that bankruptcy courts have power to substantively consolidate. *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1940), *reh'g denied, Sampsell v. Imperial Paper & Color, Corp.,* 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552 (1941). In *Sampsell,* the bankruptcy referee (predecessor of today's bankruptcy judge) consolidated the estate of the debtor individual with the assets of the debtor's corporation, wholly owned by the debtor and his family (which corporation was not a debtor) to avoid the prejudice that would otherwise have been suffered by creditors of the debtor due to the fact that the debtor had fraudulently conveyed assets to the corporation to seek to hinder his creditors.

#### 1. Doctrine of Substantive Consolidation Has Been Refined Over the Years

##### a. Early Caselaw

In the early years, when the doctrine of substantive consolidation was first evolving, the courts applied a test almost identical to the test for alter ego and/or piercing the corporate veil to determine whether or not substantive consolidation was appropriate. *E.g., Fish v. East,* 114 F.2d 177 (10th Cir.1940); *Stone v. Eacho (In re Tip Top Tailors, Inc.),* 127 F.2d 284 (4th Cir.), *cert. denied,* 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942), *and reh'g denied,* 128 F.2d 16

(4th Cir.1942); *Maule Industries, Inc. v. Gerstel*, 232 F.2d 294 (5th Cir.1956); *Anaconda Building Materials Co. v. Newland*, 336 F.2d 625 (9th Cir.1964).

A much cited 1980 case, *In re Vecco Construction*, articulated seven factors to be considered to determine whether substantive consolidation should be ordered: (1) The presence or absence of consolidated financial statements, (2) The unity of interest and ownership between various corporate entities, (3) The existence of parent and intercorporate guarantees on loans, (4) The degree of difficulty in segregating and ascertaining individual assets and liabilities, (5) The existence of transfer of assets without formal observance of corporate formalities, (6) The commingling of assets and business functions, (7) The profitability of consolidation at a single physical location. *In re Vecco Constr. Indus., Inc.*, 4 B.R. 407, 410 (Bankr.E.D.Va.1980). *Vecco* was a case under the prior Bankruptcy Act, but is still cited with approval in many cases under the present Code. *E.g., Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 249 (11th Cir.1991).

In the older cases, the application of substantive consolidation was limited to extreme cases involving fraud or neglect of corporate formalities and accounting procedures. *See, Chemical Bank New York Trust Co. v. Kheel (In re Seatrade Corp.)*, 369 F.2d 845 (2d Cir.1966) (The court found that the "interrelationships of the group were hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any assets.").

### b. Present Caselaw

As time progressed, caselaw evolved from looking at entanglement/bad acts as the justification for substantive consolidation to analyzing substantive consolidation in terms of balancing the benefits that substantive consolidation would bring against the harm that substantive consolidation would cause. *E.g., In re Snider Bros., Inc.*, 18 B.R. 230 (Bankr.D.Mass.1982).

■ Today, there are two similar but not identical circuit level tests for whether substantive consolidation should be ordered, one from the Second Circuit and one from the D.C. Circuit. Both the D.C. Circuit and Second Circuit tests include comparing the benefits to be achieved from substantive consolidation with the harms to be caused by substantive consolidation. The Ninth Circuit has not articulated a test for substantive consolidation.[2] Nor did the court find a Ninth Circuit BAP decision articulating a test for substantive consolidation.[3]

### c. D.C. Circuit Test

The D.C. Circuit test for substantive consolidation is articulated in the *Auto Train* case. *In re Auto–Train Corp., Inc.*, 810 F.2d 270, 276 (D.C.Cir.1987).

**2.** Only one Ninth Circuit case mentions substantive consolidation and that case dealt with a settlement agreement involving partnership assets. *See, In re Walsh Construction, Inc.*, 669 F.2d 1325 (9th Cir.1982). The court stated in dicta that substantive consolidation should be used sparingly. *Id.* at 1330.

**3.** Even if there were a Ninth Circuit BAP case on point, this Court would consider such to be only persuasive, not controlling. The Ninth Circuit BAP recently reiterated its position that its decisions bind all bankruptcy judges sitting within the Ninth Circuit. *In re Proudfoot*, 144 B.R. 876 (9th Cir. BAP 1992). However, *Proudfoot* miscites what the Ninth Circuit Court of Appeals stated in *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir.1990), where the Ninth Circuit declined to agree that BAP decisions bind bankruptcy judges. The BAP's perceived (and perhaps actual) need to have its

decisions be binding, expressed in *Proudfoot*, does not constitute authority making those decisions binding. Absent future federal legislation, or perhaps a future rule by the Ninth Circuit Judicial Council, making BAP decisions binding on all bankruptcy judges, there is no binding authority supporting this view. *See, Are BAP Decisions Binding on Any Court?*, 18 Cal. Bankr.J. 189 (1990) (by me and Rigoberto Obregon, for why BAP decisions are not at present binding). See the recent article by Mr. Obregon, *In re Globe Illumination Co.: A Provocative But Flawed Theory on the Precedential Value of BAP Authority*, 21 Cal.Bankr.J. 45 (1993) explaining why the theory articulated in *Coyne v. Westinghouse Credit Corp. (In re Globe Illumination)*, 149 B.R. 614 (Bankr.C.D.Cal.1993) (which argues BAP decisions bind bankruptcy and district judges) is in error. *Globe Illumination* is presently on appeal.

The D.C. Circuit *Auto Train* test has three parts, *all* of which must be met:

1. The proponent must show a substantial identity between the entities to be consolidated, *and*

2. The proponent must show that consolidation is necessary to avoid some harm or to realize some benefit, *and*

3. If a creditor objects and demonstrates that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation, then the court may order consolidation only if it determines that the demonstrated benefits of consolidation "heavily" outweigh the harm.

The second and third prongs of the *Auto Train* test require balancing the benefits/harms of substantive consolidation. The first prong, the requirement that the proponent show "substantial identity" between the entities to be consolidated, is carried over from the old alter ego/entanglement line of cases.

It appears this "substantial identity" element is not to be interpreted too narrowly, because many courts use a variety of factors to determine substantial identity. For example, the court in *Eastgroup Properties v. Southern Motel Association* adopted the *Auto–Train* approach and stated that the seven factors stated *In re Vecco Construction Industries, Inc.* (listed supra) can be used to make the prima facie case (the first two elements). *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245 (11th Cir.1991).

The Eighth Circuit has adopted a similar test also. *In re Giller*, 962 F.2d 796 (8th Cir.1992). (Factors to consider include (1) the necessity of consolidation due to the interrelationship among the debtors, (2) whether the benefits of consolidation outweigh the harm to creditors and (3) prejudice resulting from not consolidating the debtors).

### d. Second Circuit Test

The Second Circuit test for substantive consolidation under the Bankruptcy Code was first stated in the *Augie/Restivo* case, and requires that one of two alternate grounds be present. *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir.1988). The Second Circuit recently reaffirmed this test in the 1992 case of *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir.1992).

The *Augie/Restivo* test requires *either:*

1. The creditors dealt with the entities as a single unit and did not rely on their separate identity in extending credit, *or*

2. The affairs of the debtor are so entangled that consolidation will benefit all creditors because untangling is either impossible or so costly as to consume the assets.

In *Augie/Restivo* the Second Circuit denied substantive consolidation of the estates of two bakeries, which continued to be separate corporations even after one bought the other, because neither of the two tests was met.

### 2. What Substantive Consolidation Normally Involves

The result of substantive consolidation of two or more debtors' estates is the pooling of the assets and liabilities of the debtors, and the elimination of intercompany claims and of duplicate claims by creditors. *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57 (2d Cir.1992); *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515 (2d Cir.1988). The cases and the Code do not state that in substantive consolidation the debtor corporations cannot keep their charters and continue operating as separate corporations.

Caselaw is vague as to what exactly happens to corporate form in substantive consolidation. It appears from reviewing the caselaw and legal periodicals that most courts, parties, and commentators have not focused on this issue. (See declaration of Sally Neely which states her article (cited supra) surveying substantive consolidation cases, does not address corporate or tax issues raised by substantive consolidation.) Nor is there a generally accepted accounting principal governing substantive consolidation in bankruptcy.[4]

**4.** The American Institute of Certified Public Accountants has issued a Statement of Position as

However, to the extent the issue is addressed, caselaw seems to contemplate that, as where the corporate veil is pierced, the separateness of the entities being substantively consolidated disappears permanently, probably by cancelling the stock of the corporation being substantively consolidated into another. See *In the Matter of Gulfco Investment Corp.*, 593 F.2d 921 (10th Cir.1979) (substantive consolidation denied because secured creditor with lien on stock of corporation to be substantively consolidated into another objected that the consolidation would result in cancellation of the stock which was its collateral, thus prejudicing the creditor by leaving it unsecured).

■ Where one corporation is merged into another, the stock of the absorbed corporation is cancelled and the absorbed corporation ceases to exist. See *Black's Law Dictionary* 988 (6th ed. 1990).[5] If substantive consolidation is viewed as being similar to merger, then it appears the stock of all but one of the entities being substantively consolidated would be cancelled. However, Section 1123(a)(5)(C) of the Code, quoted supra, refers to "merger *or* consolidation". This suggests that substantive consolidation is *not* the same as merger, or it would be redundant to refer to "consolidation or merger".

■ In one case, *Parkway Calabasas*, my colleague Judge Bufford makes the statement, in dictum, that substantive consolidation's "nearest non-bankruptcy analogy is the merger of two corporations under state law." *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 836 (Bankr.C.D.Cal.1988). For the reasons noted immediately supra, I

disagree with this view. If consolidation caused a merger of the debtor *corporations* (rather than a merger of the debtors' *estates*) the existence of all but one corporation would cease upon consolidation. Thus, viewing substantive consolidation as being a merger of corporations unnecessarily decreases the flexibility of the doctrine and perhaps unnecessarily destroys shareholder interests. Judge Bufford also states in *Parkway Calabasas* that "the bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on the substantive consolidation." Id. at 837. This approach appears to be the correct one. Though it may be the norm that subsidiaries are merged out of existence in consolidation, the bankruptcy court has authority to alter the norm if it determines the benefits of allowing this outweigh any harm.

### 3. Equitable Doctrines May be Tailored to Fit the Needs of the Particular Case

■ Stemming as it does from Section 105 of the Code, the power to substantively consolidate is often said to be an equitable doctrine. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723 (Bankr.S.D.N.Y. 1992) (substantive consolidation is an equitable doctrine); *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57 (2d Cir.1992) (section 105's equity power is the authority for substantive consolidation).

Because substantive consolidation is an "equitable" doctrine, the bankruptcy court has the power to modify substantive consolidation to meet the specific needs of the case. *E.g., In re Parkway Calabasas, Ltd.*, cited supra, 89 B.R. at 837.

---

to how accounting should be done for entities in bankruptcy. [Statement of Position 90—7 (November 19, 1990) of AICPA Task Force on Financial Reporting of Entities of Reorganization Under the Bankruptcy Code]. This statement of position, which covers such things as "fresh start" accounting for entities after reorganization, does *not* address the subject of substantive consolidation, or how accounting should be done for substantively consolidated estates. (See declaration of CPA Irving Thau, stating that "there are no recognized accounting rules governing substantive consolidation" in a bankruptcy case.).

**5.** Black's Law Dictionary defines corporate merger as follows: "An amalgamation of two corporations pursuant to statutory provision in which one of the corporations survives and the other disappears. The absorption of one company by another, the former losing its legal identity, and latter retaining its own name and identity and acquiring assets, liabilities, franchises, and powers of former, and absorbed company ceasing to exist as separate business entity."

## III. *ANALYSIS—APPLYING THE DOC-TRINE OF SUBSTANTIVE CONSOL-IDATION TO THE CASE AT HAND*

■ The preceding caselaw must now be applied to the facts of this case. Because the Ninth Circuit Court of Appeals has not articulated a substantive consolidation test; the bankruptcy court is free to choose between the test articulated by the D.C. Circuit in *Auto–Train* and the test articulated by the Second Circuit in *Augie/Restivo*. Here it is not necessary to choose, because both the D.C. Circuit test and the Second Circuit test are met.

Both the D.C. Circuit and Second Circuit tests require comparing benefits of consolidation with any harms to be caused by consolidation, so this is the first step.

### A. Analysis of Benefits to Be Achieved By Substantive Consolidation as Requested

### 1. Allows Doing Single Plan Instead of Five Separate Plans and Allows Confirming a Plan Now

The debtors' plan of reorganization, which is set for its confirmation hearing this same date, requires substantive consolidation of the five debtors' estates. Without substantive consolidation a single plan for the five debtors would probably not be possible; five separate plans would probably be required. Moreover, to confirm separate plans, the liquidation and reorganization values of the five separate debtors would have to be determined. This would be difficult to do, because the five debtors have always operated as a single unit. (Declaration of Dan Yukelson). As determined at the confirmation hearing held this date, the debtors' plan is confirmable, as presently proposed, without need for cramdown, so long as the Court grants substantive consolidation of the five estates in the form here requested.

Thus, granting this motion is the last impediment to confirming a consensual plan. Granting this motion will allow these debtors to confirm the present plan. This will speed the debtors' emergence from bankruptcy and will save all parties the delay and uncertainty as to whether different plans, not calling for substantive consolidation, could be devised or confirmed. This is a huge benefit to the debtors, their shareholders and all the debtors' creditors.

### 2. Avoids Many Issues/Conflicts

Additionally, granting the substantive consolidation as proposed by the debtors eliminates the classification and voting problems which would result from having to classify claims of one debtor against other debtors, whether these claims could be equitably subordinated, whether they could be avoided as preferences or fraudulent conveyances, whether they could vote and in what classes and amounts, etc. Moreover, absent substantive consolidation, one debtor might need to object to the claims of other debtors against it, and vice versa, or seek to collect on guarantees from one debtor to another. This would cause a conflict so that separate counsel would have to be employed for each of the five debtors, at least (1) for claims objections, and (2) for plan proceedings, so one or more debtors could object to the plan(s) proposed by one or more other debtors. Moreover, absent substantive consolidation, administrative expenses of bankruptcy, such as cost of attorneys and accountants, would have to be allocated among the five estates. (See Declaration of Dan Bane).

### 3. Avoids the Negative Tax Effects Which Would Result From Permanent Cancellation of Interdebtor Debts

As discussed supra in *Facts*, allowing the continued existence of the subsidiaries and the bookkeeping procedures among the debtors described supra at Section I, Subsection D 4, avoids the negative tax effects which would result from a consolidation which permanently cancelled the interdebtor debts and/or merged the debtor corporations. (Declarations of Jeffrey Tolin and Irving Thau).

### B. Is There Any Harm?—Infer No Harm from Substantive Consolidation as Requested by Debtor Due to Lack of Objection

■ The court infers lack of harm from the fact that no party in interest whatsoev-

er is presently objecting to substantive consolidation in the form here moved for by the debtors. This is a "mega case" where all the major parties are represented by major law firms. All major parties have been active throughout this case, and there has been much motion practice on many issues. The court infers that if any party felt it was being harmed, that party would be objecting. The initial objection of CIT and the alternative motion of the Creditors' Committee have both been withdrawn due to fact that the present consensual plan was worked out. That plan requires substantive consolidation as here sought.

### C. Additional Elements Under Second Circuit *Augie/Restivo* Test

#### 1. Benefit to Be Achieved From Consolidation Must Arise Due to Affairs of Debtors Being "Entangled"

Under the Second Circuit *Augie/Restivo* test, where substantive consolidation is ordered because it will "benefit all creditors", the benefit to the creditors must arise due to the fact that the debtors are "entangled". See prong 2 of *Augie/Restivo* test supra: "the affairs of the debtor are so *entangled* that consolidation will benefit all creditors because *untangling* is either impossible or so costly as to consume the assets." (emphasis added) Here the "entanglement" element is met.

The debtors are not entangled in a records sense. As a publicly held, SEC reporting company, SBP has audited accounting records from which the transactions of the parent and its subsidiaries can be sorted out, so in the records sense the affairs of the debtors are separated. However, the debtors function as a consolidated entity, and there are multiple interdebtor guarantees, and interdebtor debts. (Declaration of Dan Bane and Dan Yukelson). Thus in a functional sense the affairs of all five debtors are so entangled that consolidation will benefit all creditors, because the effect/validity of all of these intercompany debts and guarantees will not have to be sorted out by the parties or court. (Declarations of Dan Bane and Dan Yukelson discussed supra).

#### 2. The Alternative *Augie/Restivo* Test—Disregards Entanglement/Benefit, and Asks Whether "Creditors Dealt With Debtors as Single Unit ..."

The two prongs of the *Augie/Restivo* test are in the alternative. Because the "benefit arising from entanglement of affairs of debtors" prong of the *Augie/Restivo* test is met, the Court need not reach the alternative prong of whether "the creditors dealt with the entities as a single unit and did not rely on their separate identity in extending credit".

However, that test is met here as well. As discussed supra in *Facts*, the evidence is uncontroverted that the five debtors always held themselves out as a single consolidated unit, and did their financial reporting on a consolidated basis. (Declarations of Dan Bane and Dan Yukelson). The Bane and Yukelson declarations reflect that creditors could not have relied on the separate identity of the subsidiaries or parent in extending credit to them, due to the fact that the debtors always held themselves out as a consolidated entity. (Id.)

### D. Additional Element Under DC Circuit *Auto Train* Test—"Substantial Identity" of Entities to Be Consolidated

As already discussed supra, the second and third elements of the *Auto Train* test require balancing benefits/harms. The second prong, "that the consolidation is necessary to avoid some harm or to realize some benefit" is clearly met for the reasons discussed supra.

The third prong of the *Auto Train* test requires additional analysis of benefits versus harms where there is an objection. Here, the third prong need not be addressed because there are at present no objections to the motion to substantively consolidate.

The only other prong of the *Auto Train* test is the requirement that the movant show "a substantial identity between the entities to be consolidated" (first element). Clearly parent SBP and its four debtor subsidiaries do not meet the "substantial identity" test in the old alter ego/piercing

the corporate veil sense. SBP and all its subsidiaries keep separate, audited, books and records, and observe all corporate formalities under state law. However, as already noted, the more modern view of "substantial identity", and the direction in which the caselaw seems to be moving, is to view "substantial identity" more in functional terms. Thus, this requirement is very similar to the "entanglement" requirement in the *Augie/Restivo* test. As discussed supra, viewed in functional terms, SBP and its subsidiaries all operate as a single consolidated entity. Thus, this third prong of the *Auto Train* test is met as well.

### E. Some of What the Debtors are Asking for is an Issue of First Impression

So far as the research of the parties and the court could determine, there is no reported case where a court did exactly what the DIPs are asking the court to do here, in so far as suppressing the separateness of the five debtors only temporarily, for voting and distribution purposes, but allowing the five corporations to survive and continue as separate corporations after plan confirmation, as discussed at 564–66 supra. Thus, this is an issue of first impression.

### F. No Reported Case Which Would Forbid Doing What DIPs Request

On the other hand, though there is no case on point which ordered what the DIPs here request, there is no reported case, so far as the court could determine, which would forbid doing what the DIPs request. As noted supra, the court does not view consolidation as requiring actual merger of the entities, due to the "merger *or* consolidation" wording of Section 1123(a)(5)(C).

### G. Ultimate Issue

The ultimate issue here is whether the court should refuse to substantively consolidate (1) when no one is objecting, (2) when all the major creditor groups are affirmatively supporting the DIPs' motion to substantively consolidate, and (3) when a consensual plan of reorganization premised on substantive consolidation is confirmable if substantive consolidation in the form requested by the DIPs is granted.

Determining the proper answer would be much more problematic if there were any objections to debtors' motion. However, there are no objections, so the court is not called upon to rule on whether substantive consolidation in the form here requested could be granted over the objection of any creditor or interest holder. The fact that the Creditors' Committee for Unsecured Creditors, the insurance company and banks lenders, the equipment lender and the postpetition lender have all expressly stated their support for the motion on the record in open court is a waiver of any right to object to the consolidation here requested if, *arguendo*, consolidation was inconsistent in any respect with controlling caselaw.

## IV. CONCLUSION

On the facts of this case, the Court will not stand in the way of what all the major parties are requesting, where no one is objecting to substantive consolidation, and where there is a consensual plan premised on substantive consolidation which is confirmable this date without cramdown if substantive consolidation in the form requested by debtor is granted.

Though what the DIPs are requesting is in some respects different from the "typical" substantive consolidation, the deviations from "typical" substantive consolidation here requested appear to work in the particular circumstances of these debtors and their creditors. Substantive consolidation is an equitable doctrine, which the court is supposed to tailor to the facts of the particular case. Thus, the court has the power to modify the application of the doctrine as requested here, to fit the needs of this specific case.

Substantive consolidation of the five debtors' estates, **with terms of substantive consolidation to be as itemized in Part I, Subpart D, Items 564–66 supra,** is hereby ordered in each of the five cases, pursuant to the motions to substantively consolidate

brought by each of the five debtors in possession.

This opinion shall constitute the Court's Findings of Fact and Conclusions of Law in each of the five cases.