In re DELTACORP, INC., et al., Debtors.

Edward G. MORAN, as Trustee of the
Estates of the Consolidated
Debtors, Plaintiff,

v.

HONG KONG & SHANGHAI BANKING
CORP., Defendant.

Bankruptcy Nos. 89–B–11759 (TLB), 89–B–11832 (TLB), 89–B–11833 (TLB), 90–B–12463 (TLB), 90–B–12464 (TLB) and 90–B–12371 (TLB).

Adv. No. 91–5955A.

United States Bankruptcy Court,
S.D. New York.

March 10, 1995.

As Amended March 21, 1995.

Ellen G. Zindler, New York City, for debtors.

Emmet, Marvin & Martin by Edward P. Zujkowski, New York City, for defendant.

## DECISION ON TRUSTEE'S MOTION TO AMEND AND BANK'S MOTION FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge.

Much has been written about whether and when substantive consolidation is appropriate. But considerably less guidance exists regarding the effect of an order substantively consolidating estates. It is in this grayer area that the dispute in this adversary proceeding arises. The chapter 11 trustee for the consolidated estates moves to amend his complaint to assert that a payment made by one of the debtors was constructively fraudulent and is thus recoverable from the bank which received it because the consideration for the payment flowed to another of the debtors. The bank urges that I not permit an amendment said to be rendered futile by the consolidation of the estates. In addition, the bank seeks summary judgment on the trustee's original claim, a preference claim, on the theory that the undisputed facts establish that the payment which the bank received was made in the ordinary course of business. This decision disposes of both motions.

### I.

Dr. Antonino Castellett, himself a debtor, owned a variety of companies in whole or in part which are also the subject of bankruptcy proceedings, here and abroad. Thus far, because of possible criminal ramifications, he has not been forthcoming with information regarding his business affairs. The corporate parent (which is in turn owned by Dr. Castellett) is Deltacorp, Inc. ("Deltacorp"), a chapter 11 debtor. When that case was filed, Edward Moran was appointed as a responsible officer, with the concurrence of the creditors and Dr. Castellett. Mr. Moran was also appointed trustee for all the other debtors except Dr. Castellett. When Mr. Moran moved to substantively consolidate the cases (subsequent to his commencement of this particular adversary proceeding), he asked that the surviving entity for bankruptcy purposes be Deltacorp. Dr. Castellett did not object and all objections of other parties were resolved. By virtue of the granting of that motion Dr. Castellett's case was converted to a chapter 11 reorganization, his estate became part of the larger, consolidated chapter 11 estate, and his own trustee was displaced by Mr. Moran (the "Trustee").[1] For ease of reference, the consolidated estates will be dubbed the Castellett Enterprises. With that procedural background in place, we move backwards in time to the facts underlying this adversary proceeding.

On November 18, 1988, Deltrade Bermuda asked Hong Kong and Shanghai Bank, Ltd. (the "Bank") to open an irrevocable letter of credit for $551,250 so as to facilitate Deltrade Bermuda's purchase of 5,000 metric tons of bright yellow sulphur from Nitrosul, Ltd. ("Nitrosul"), another of the companies owned partly or wholly by Dr. Castellett. Nitrosul too is consolidated within the Castellett Enterprises. Under the terms of the letter of credit, Deltrade Bermuda was required to tender payment to the Bank on the 180th day after the presentment by Nitrosul of the required documents. Both Deltrade Bermuda and Deltacorp guaranteed repayment of the letter of credit. The Bank asserts, without contradiction by the Trustee, that the provision of the letter of credit for a 180 day lag prior to payment was included to allow Deltrade Bermuda a period in which to resell the sulphur and repay the Bank for the credit extended. On November 29, 1988, after Nitrosul presented the necessary documents to the Bank, the Bank tendered payment of $544,080.60 as required under the terms of the letter of credit. On December 13, 1988, a trust receipt for the sulfur was issued by Deltrade to the Bank, enabling the

1. By order entered on April 23, 1993, the estates of Deltacorp, Deltrade International, Ltd. ("Deltrade Bermuda"), Deltrade International, Inc. ("Deltrade Delaware"), Nitrosul, Ltd., Nitrophos, Ltd., and Antonino Castellett were substantively consolidated. Not all of these corporate entities were wholly-owned subsidiaries of Deltacorp but Dr. Castellet had majority control of each of them, as he did of Deltacorp as well.

Bank to be paid from the proceeds of the sale of the collateral. The Trustee and the Bank agree that the trust receipt did not create a security agreement between the parties; its relevance is limited to the preference claim, specifically as to whether or not the transfer was made in the ordinary course of Deltacorp's business. On May 23, 1991, Deltacorp tendered the required funds in accordance with the terms of the letter of credit and the trust receipt.[2] Less than 90 days later, an involuntary chapter 11 petition was filed against Deltrade Bermuda. It was followed by entry of an order for relief and the appointment of the Trustee, as mentioned earlier.

## II.

The Trustee's adversary proceeding challenges Deltacorp's repayment of the letter of credit as a preference. It does not mention fraudulent transfer as a basis for relief. In its answer, the Bank admitted that the transfer was made by the debtor within 90 days of the filing of the bankruptcy petition and was on account of an antecedent debt. The Bank defended, however, by pleading that the transfer was made in the ordinary course of business, thus qualifying as a statutorily-defined exception to an otherwise avoidable preference. Included as an exhibit to the Bank's papers was a copy of a February 13, 1989, letter of credit application between the same parties which contained terms similar to those as in the transaction at issue. Consequently, the Bank moved for summary judgment seeking to have the Trustee's preference action dismissed.

On November 5, 1992, after hearing argument on the Bank's summary judgment motion, I adjourned the motion in order to allow the Trustee to conduct discovery and to submit facts in opposition to the ordinary course defense.

His discovery completed, the Trustee now moves for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a) to permit him to recover from the Bank on behalf of Deltacorp, rather than Deltrade Bermuda, as he had previously sought to do. He seeks to recover under both preference and fraudulent transfer theories. The Bank in turn responds with a two-pronged defense. First, it argues that because the estates of entities including Deltacorp and Deltrade Bermuda were substantively consolidated, the fraudulent transfer claim was wiped out. Additionally, harking back to its answer to the complaint, the Bank contends that the payment is not immune from recovery even if preferential because it was made in the ordinary course of business of the parties.

## III.

■ Amendments to complaints are governed by Rule 15(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure.[3] It is by now well established that leave to amend pleadings should be freely given. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, such leave should not be granted where the proposed amendment is legally insufficient. *In re N. Merberg & Sons, Inc.*, 166 B.R. 567 (Bankr. S.D.N.Y.1994); *see also* 6 C. Wright, A. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1487 at 643 (2d ed. 1990) ("[i]f a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile.") It is in this provision of the black letter law that the

2. While the Trustee originally claimed that payment was made by Deltrade Bermuda, his proposed amended complaint now asserts that the payments were in fact made by Deltacorp on behalf of Deltrade Bermuda.

3. Rule 15(a) provides:
 (a) **Amendments.** A party may amend the party's pleading once as a matter of course any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party

may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party: and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Bank says its solace lies. And it is therefore to the sufficiency of the proposed amended claims that I turn. This endeavor requires examination of the effects of the order of substantive consolidation.

■ Substantive consolidation derives from the bankruptcy court's general equitable powers provided in section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a). 5 L. King, *Collier on Bankruptcy,* ¶ 1100.06 at 1100–34 (15th ed. 1988); *In re Parkway Calabasas Ltd.,* 89 B.R. 832, 837 (Bankr. C.D.Cal.1988), *aff'd,* 949 F.2d 1058 (9th Cir. 1991). Unlike joint administration (also referred to as procedural consolidation) [4], which does not affect the substantive rights of claimants of the respective debtor estates, substantive consolidation merges the separate estates into one estate for distributive purposes. Usually, the assets and liabilities are shared, with duplicate claims being eliminated and intercompany claims being extinguished.[5] *F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57, 58–59 (2d Cir.1992). As the Second Circuit has noted:

> The power to consolidate is one arising out of equity, enabling a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation.

*In re Continental Vending Machine,* 517 F.2d 997, 1000 (2d Cir.1975); *see also In re Augie/Restivo Baking Co.,* 860 F.2d 515, 518 (2d Cir.1988) (substantive consolidation is "no mere instrument of procedural convenience ... but a measure vitally affecting substantive rights.") (citations omitted); *In re Cooper,* 147 B.R. 678 (Bankr.D.N.J.1992) (substantive consolidation more extensive relief than "piercing the corporate veil", since it is

complete merger of legal entities for bankruptcy distribution purposes).

■ The court is afforded a good deal of discretion in constructing its order of substantive consolidation, and its appropriateness is determined by the court on a *sui generis* basis. *See* William H. Thornton, *The Continuing Presumption Against Substantive Consolidation,* 15 Banking L.J. 448, 449 (1988). The court retains the power to order a less than complete consolidation, preserving avoidance claims by the formerly separate estates. *See First National Bank v. Giller (In re Giller),* 962 F.2d 796, 799 (8th Cir.1992); *In re Parkway Calabasas Ltd, supra,* at 837; *In re Standard Brands Paint Co.,* 154 B.R. 563, 570 (Bankr.C.D.Cal.1993). But here, no request was made for preservation of any avoidance claims owned by the formerly separate estates. Notwithstanding the silence of the order, the Trustee urges that the proposed claims against the Bank are good ones. Much as did the defendant bank in *In re Giller,* 962 F.2d at 799, the Bank argues that the benefit which Deltrade Bermuda · received supports the transfer made by Deltacorp, eliminating any need to undo the transaction. As the Bank explains its theory, the creditors of Deltacorp suffer no harm because the loss of Deltacorp's asset is offset by the elimination of Deltrade Bermuda's liability to the Bank.

■ Both parties direct my attention to *Parkway Calabasas,* 89 B.R. 832, which involved a principal and four limited partnerships of which he and his nondebtor partner were the sole owners. Their business was the construction and development of office buildings, shopping centers and residences. Prior to bankruptcy, a tradesman performed tenant improvements for one of the debtors and, as a result thereof, acquired a mechanic's lien against that debtor's property. When a dispute arose regarding the amount

---

**4.** Procedural or administrative consolidation is authorized by Fed.R.Bankr.P. 1015. For purposes of this opinion "consolidation" refers to substantive consolidation alone.

**5.** Because substantive consolidation is an equitable doctrine, the relief granted can come in different forms to square with the facts of each case. Thus, for example, a secured creditor with a floating lien on receivables and inventory of

one debtor might not be permitted to extend its lien to the assets from all of the consolidated debtors. So too if the debt-to-asset ratio of one of the consolidated estates is far different from that of the other estates, it may be most equitable to give a different distribution to the unsecured creditors of that estate. It is therefore impossible to define for all cases the results of substantive consolidation.

of the tradesman's bill, a compromise was negotiated and payment was made by another of the debtors. That payment left the paying debtor insolvent. Bankruptcy ensued, followed by substantive consolidation of the five estates. The chapter 11 trustee attacked the settlement payment as a constructively fraudulent conveyance, claiming that the second debtor did not receive adequate consideration for its payment of a debt of the first debtor. The trustee further argued that the consolidation order was prospective rather than retrospective in its effect, as a result of which his fraudulent transfer claim against the tradesman, which arose prior to the order of consolidation, was preserved.

Judge Bufford held that the fraudulent transfer claim was eliminated by the substantive consolidation of the estates because there was now a single creditor pool which benefitted from all assets and shared in all liabilities. As he noted, the impact of the payment upon creditors was exactly the same as if the debtor receiving the consideration had also made the payment to the tradesman. In other words, the pooled estate was not diminished by the transfer. In discussing the nature of substantive consolidation, the judge tried to find a nonbankruptcy equivalent and stated that "[i]t's [sic] nearest non-bankruptcy analogy is the merger of two corporations under state law." *Id.* at 836. Nowhere, however, did Judge Bufford refer to the **corporate form** of the debtors; he quite carefully referred to the **merger of their estates for distributive purposes.**

The decision in *In re Standard Brands Paint Co.,* 154 B.R. 563, 569–70 (Bankr. C.D.Cal.1993) points out that there is a distinction between the legal merger of two corporations and the merger of their bankruptcy estates. With substantive consolidation the estates are merged for the purposes

of bankruptcy administration, but the consolidation alone does not effect a corporate merger.[6] In many cases substantive consolidation will be accompanied by merger of the legal entities, but that is not invariable. To the extent that *Standard Brands* suggests that Judge Bufford equated substantive consolidation with corporate merger, the criticism is unjustified. Judge Bufford remarked only that there is some analogy between substantive consolidation and merger; he certainly did not say that they are the same thing or that they accomplish the same objective. In short, Judge Bufford said nothing at odds with *Standard Brands.* This disposes of the Trustee's contention that *Standard Brands* vitiates the reasoning of *Parkway Calabasas.* The two decisions are quite consistent.

The Trustee's reliance on *In re Giller,* supra, 962 F.2d 796, is equally unavailing. There, Giller, the principal of six corporations, filed a chapter 11 petition. A chapter 11 trustee was appointed who thereafter filed voluntary chapter 11 petitions for the corporations. The corporate debtors moved to substantively consolidate their cases because Giller had abused their corporate forms and had caused them to make transfers that might give rise to fraudulent transfer and preference claims. Only one of the debtors was administratively solvent; the other debtors could not afford to fund the litigations. The bankruptcy court permitted the substantive consolidation on the theory that in substantive consolidation lay the only hope of funding the litigations necessary to permit a distribution to the unsecured creditors.[7] Recognizing the potential harm to the creditors of the one solvent debtor, the court left open the possibility of separate classification of those creditors under a plan and more generous treatment of that class than that afforded the other unsecured creditors.

---

**6.** The merger can be effected through cancellation of the stock of one or more of the consolidated entities, often through a plan of reorganization.

**7.** The conclusion that the funds of one estate can be used for another only through substantive consolidation is unduly narrow. It may have been possible, for example, for the solvent debtor to enter into a superpriority lending relationship

with each of the other debtors so that the funds advanced would have been paid out of the first proceeds realized by the various estates. It is certainly not uncommon in related chapter 11 cases for one debtor to function as a treasury for the others, with loans of funds being made as needed, provided that sufficient records are maintained to track the movement of money at all times.

Whereas the court ruled that consolidation would eliminate intercompany claims, the court explicitly preserved the trustee's avoidance powers as to any transfers made by the debtors to third parties for the benefit of other debtors.

The decision was affirmed in the district court. On appeal to the circuit court the one objecting creditor argued, as does the Bank here, that the avoidance claims should not have survived consolidation because the consideration given by the transferee to one debtor supported the transfer from another debtor. Citing *Parkway Calabasas,* the Eighth Circuit "recognize[d] that substantive consolidation normally would eliminate the justification for the exercise of the trustee's avoidance power." 962 F.2d at 799. Nonetheless, the circuit court affirmed the bankruptcy court's partial consolidation of the estates, determining that, in the face of the explicit preservation of the avoidance claims, which constituted the very reason for the substantive consolidation, the claims survived. The distinction between that case and this, of course, is that here the order of consolidation did not preserve the avoidance claims arising out of one debtor's payment of the just debt of another.

The Trustee's next effort is an attempt to persuade me that because substantive consolidation orders do not ordinarily change the date of the order for relief of any of the consolidated debtors, the debtors should not be considered to have consolidated estates until after the entry of the consolidation order (or maybe entry of their respective orders for relief). *See Drabkin v. Midland–Ross Corporation (In re Auto Train Corporation, Inc.),* 810 F.2d 270 (D.C.Cir.1987) (proponent of order consolidating separate entities into one estate as of date of the earlier-filed petition cannot shift the filing date of the later-filed petition without a particularized showing that the benefits of the shift outweigh the harm to any party in interest claiming such harm); *Kroh Brothers Development Co. v. Kroh Brothers Management Co. (In re Kroh Brothers Development Co.,* 117 B.R. 499 (W.D.Mo.1989)) (affirming entry of *nunc pro tunc* order of substantive consolidation where *Auto Train* showing was

made). The contention, poorly articulated in the Trustee's papers, appears to be that to treat the debtors as one for purposes of considering the vitality of the fraudulent transfer claims is in effect to impermissibly consolidate their estates prior to any of their bankruptcies. This argument misses the point. The issue is not whether the debtors were consolidated prior to all of their bankruptcies; indeed, they cannot have been. The issue is whether the consolidated debtors are entitled to recover a constructively fraudulent transfer when one of them received fair consideration for that transfer so that the consolidated estate is augmented and diminished in equal amounts by the consideration received and the subsequent transfer in payment of the debt thereby incurred. To state the issue clearly is almost to resolve it, because it makes little sense to permit the consolidated estate to recover a transfer not made with actual fraudulent intent when the estate has not been harmed. The effect on the creditors is identical whether repayment was made by the recipient of the consideration or some other consolidated debtor.

Finally, citing a number of cases, the Trustee argues that the court must look at the facts before determining the precise effect of substantive consolidation. One certainly cannot quarrel with that assertion. But the undisputed facts show that it would be inequitable to unwind the transfer as fraudulent because the debtors received fair consideration for it. *Accord* Jonathan M. Landers, *A Unified Approach to Parent, Subsidiary, and Affiliate Questions in Bankruptcy,* 589 U.Chi.L.Rev. 589, 649 (1975). Therefore, I conclude that the constructive fraudulent transfer claims cannot succeed.

■ The foregoing discussion has nothing at all to do, however, with the Trustee's claim to avoid the transfer as made with actual intent to hinder, delay or defraud creditors. Each of the cases cited by the Bank for the proposition that consolidation wiped out the fraudulent transfer claims relates to constructively fraudulent transfers in which the fairness of the consideration to the consolidated estate was of prime importance. But an actual fraudulent transfer action may lie

irrespective of whether the estate received reasonably equivalent consideration.

At oral argument I asked the Trustee's counsel whether the Trustee was pursuing claims for avoidance of the transfer to the Bank on the theory that it constituted an actual fraud. Counsel responded that no such claims were being pursued. The proposed pleading, however, does contain an actual fraud claim. It is thus unclear whether the Trustee means to pursue or abandon that theory. The parties having completely ignored this claim, I see no grounds to conclude at this time that I would have to dismiss it.

## IV.

We turn now to the Bank's request that I grant summary judgment dismissing the preference claims asserted by the Trustee. The Trustee urges that I not determine at this juncture that the ordinary course of business defense is viable for at least two reasons: (i) that the indebtedness of Deltrade Bermuda was repaid by Deltacorp such that the transfer cannot be said to have been in the ordinary course of business and (ii) that the transfer was not ordinary, having been made as part and parcel of a multiple financing scheme whereby multiple banks were financing the same transactions without knowing it.

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rules of Bankruptcy Procedure 9014 and 7056, provides that summary judgment is appropriate if the court determines that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *In re Ionosphere Clubs, Inc.*, 147 B.R. 855, 860 (Bankr.S.D.N.Y.1992). A fact is considered material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at

2510. In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Carter v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *In re Ionosphere Clubs, Inc.*, 147 B.R. at 861. That burden can be satisfied by demonstrating the absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2554. When a motion for summary judgment is made and supported by the movant, Rule 56(e) requires the non-moving party to set forth specific facts demonstrating that genuine issues of material fact remain for trial. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). The non-moving party may not defeat a properly supported motion for summary judgment by relying on self-serving and conclusory statements concerning the true nature of the facts. *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983). As the Supreme Court has noted, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. at 586, 106 S.Ct. at 1355; *cf. In re Ionosphere Clubs, Inc.*, 147 B.R. at 861.

█ Section 547(c)(2) provides that the trustee may not avoid a transfer to the extent such transfer was made in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee, is in the ordinary course of business between both parties, and is made according to ordinary business terms. The burden is on the defendants to

establish this defense, including each of its elements. *See* 11 U.S.C. § 547(g); *Advo-System v. Maxway Corp.*, 37 F.3d 1044, 1047 (4th Cir.1994); *Clark v. Balcor Real Estate Finance, Inc. (In re Meredith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir.1993); *Sapir v. Keenan Lumber Co. (In re Ajayem Lumber Corp.)*, 143 B.R. 347, 353 (Bankr. S.D.N.Y.1991); *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 372 (Bankr. S.D.N.Y.1986). The exception is designed to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee. *See* 5 L. King, *Collier on Bankruptcy*, ¶ 547.10 at 547–48 (15th ed. 1994).

■■■■ In order to prove the defense, the defendant must show that the transfer was both subjectively and objectively ordinary; that is, the transfer must be proven to have been subjectively ordinary as between the debtor and the transferee and objectively ordinary in the type of business in which the debtor was engaged. *See In re Excello Press, Inc.*, 967 F.2d 1109, 1114 n. 3 (7th Cir.1992) (subjective/objective test is majority view today); *Child World, Inc. v. Service Merchandise Co. (In re Child World, Inc.)*, 173 B.R. 473, 478 n. 4 (Bankr.S.D.N.Y.1994); *see also* M. Bloom, R. Gorelick, H. Mackenzie, *Exceptions to Bankruptcy Preferences: Countryman Updated*, 47 Bus.Law. 529 (1992). Not surprisingly, it is the rare case of this sort which can be decided on a motion for summary judgment, given the peculiarly factual nature of the inquiry. *See Harrison v. The Ink Spot (In re Rave Communications, Inc.)*, 128 B.R. 369, 372 (Bankr. S.D.N.Y.1991) (what is ordinary between debtor and creditor is essentially a question of fact); *In re Ajayem Lumber Corp.*, 143 B.R. at 353 (question of fact as to standards prevailing in industry precluded court from granting summary judgment); *Child World*, 173 B.R. at 478 n. 4.

■■■■ This case is no exception to the general rule that the ordinary course of business defense cannot be determined on a motion for summary judgment. Whereas the Bank has produced some evidence tending to support its assertion that the transfer was normal from the Bank's perspective [8], it has presented no evidence at all of the ordinariness of the transfer from the debtor's perspective. Indeed, drawing inferences, as I must on this motion, in favor of the non-moving party, there is a lot which suggests that this transfer may not have been ordinary such as the fact that the transfer was made not by the primary obligor, Deltrade Bermuda, but by the guarantor, Deltacorp.[9] Further the Trustee suggests that this transfer was part and parcel of the fraudulent scheme in which the debtors were engaged, for the parties to the sale of sulfur which was facilitated by the Bank's issuance of the letter of credit were both owned by Dr. Castellett. This, too, cuts against the Bank's contention that the repayment by Deltacorp was an ordinary course transfer.

Accordingly, the Trustee's motion to amend is granted in part and denied in part, with leave being granted to plead the actual fraud and preference claims only. The Bank's motion for summary judgment is denied. SETTLE ORDER consistent with this opinion.

---

**8.** That evidence is hardly unequivocal. The Bank showed that in earlier transactions a similar but not identical form of documentation was utilized. The Trustee points to the differences in support of his position that the challenged transfer was not ordinary.

**9.** The fact that Deltrade Bermuda and Deltacorp were substantively consolidated does not mean that the court no longer has to look to the method of repayment to determine whether it was extraordinary for purposes of determining whether the ordinary course defense is available. The facts as presented do not allow me to determine whether it was standard operating procedure between the parties for one debtor to incur the debt and a guarantor-debtor to repay it. *See, e.g.,* Landers, *A Unified Approach, supra,* at 649.