**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN THE MATTER OF TRANSWEST RESORT PROPERTIES, INC., *Debtor*, | No. 16-16221 D.C. Nos. 4:12-cv-00024-RCC 4:12-cv-00121-RCC |
| JPMCC 2007-C1 GRASSLAWN LODGING, LLC, *Appellant*, v. TRANSWEST RESORT PROPERTIES INCORPORATED; SWVP LA PALOMA LLC; SWVP HILTON HEAD LLC, *Appellees.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted October 25, 2017
San Francisco, California

Filed January 25, 2018

Before:  J. CLIFFORD WALLACE, MILAN D. SMITH, JR., and MICHELLE T. FRIEDLAND, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.; Concurrence by Judge Friedland

## SUMMARY[*]

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's order approving a Chapter 11 "cramdown" reorganization plan of five related debtors.

The debtors had previously acquired two resorts.  A lender, whose claim was undersecured, elected to have its entire claim treated as secured pursuant to 11 U.S.C. § 1111(b)(2).  The plan restructured the lender's loan to a term of 21 years and included a due-on-sale clause requiring the debtors to pay the lender the outstanding balance of the loan if the resorts were sold.  The due-on-sale clause did not apply if the debtors were to sell the resorts between years five and fifteen.

The panel held that an election under § 1111(b)(2) does not require that a due-on-sale clause be included in a reorganization plan.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel also held that § 1129(a)(10), which requires that at least one impaired class accept a "cramdown" plan, applies on a "per plan" basis, rather than a "per debtor" basis.

Concurring, Judge Friedland agreed that § 1111(b)(2) does not require that a bankruptcy plan include complete due-on-sale protection for the creditor and that § 1129(a)(10) applies on a "per plan" basis. She wrote separately to acknowledge the argument of the lender that it was unfairly deprived of the ability to object effectively to reorganization of two of the debtors, despite being their only creditor. Judge Friedland wrote that any unfairness resulted not from the interpretation of § 1129 challenged by the lender, but instead from the fact that the reorganization treated the five debtor entities as if they had been substantively consolidated—something the lender did not object to in the bankruptcy court.

## COUNSEL

David M. Neff (argued) and Eric E. Walker, Perkins Coie LLP, Chicago, Illinois; Dean C. Waldt, Ballard Spahr LLP, Phoenix, Arizona; for Appellant.

Donald A. English (argued) and Christy I. Yee, English & Gloven APC, San Diego, California; Susan G. Boswell and Brad D. Terry, Quarles & Brady LLP, Tucson, Arizona; for Appellees.

**OPINION**

M. SMITH, Circuit Judge:

JPMCC 2007-C1 Grasslawn Lodging, LLC (Lender) objected to the Chapter 11 plan of five related entities (collectively, Debtors) who previously acquired two hotels. Despite these objections, the bankruptcy court approved a "cramdown" reorganization plan. The Lender appealed to the district court, but the district court concluded that the Lender's appeal was equitably moot. In 2015, we reversed the district court's equitable mootness determination, and remanded to the district court for consideration of the Lender's appeal on the merits. *See In re Transwest Resort Props., Inc.*, 801 F.3d 1161 (9th Cir. 2015) (*Transwest I*).

On remand, the district court evaluated the merits of the Lender's appeal, and concluded that (1) an election under 11 U.S.C. § 1111(b)(2) does not require that a Chapter 11 plan contain a due-on-sale clause; and (2) 11 U.S.C. § 1129(a)(10) applies on a "per plan," not a "per debtor," basis. This appeal is limited to the construction of 11 U.S.C. § 1111(b)(2) and 11 U.S.C. § 1129(a)(10).[1] Based on the plain language of both statutory sections, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2007, the Debtors acquired the Westin Hilton Head Resort and Spa and the Westin La Paloma Resort and Country Club (collectively, the Resorts). The Debtors were composed of: Transwest Hilton Head Property, LLC, and Transwest Tucson Property, LLC (Operating Debtors);

---

[1] Unless otherwise noted, subsequent statutory references are to Title 11 of the United States Code.

Transwest Hilton Head II, LLC, and Transwest Tucson II, LLC (Mezzanine Debtors); and Transwest Resort Properties, Inc. (Holding Company Debtor). The Holding Company Debtor was the sole owner of the Mezzanine Debtors. The Mezzanine Debtors were, in turn, the sole owners of the two Operating Debtors, who owned and operated the Resorts. The acquisitions were financed by (1) a $209 million mortgage loan to the Operating Debtors from the Lender, secured by the Resorts (the Operating Loan); and (2) a $21.5 million loan from Ashford Hospitality Finance, LP (Mezzanine Lender), secured by the Mezzanine Debtors' interests in the Operating Debtors (the Mezzanine Loan).

In 2010, the Debtors filed for Chapter 11 bankruptcy. The five cases involved were jointly administered, but not substantively consolidated.[2] The Lender filed a claim in the bankruptcy proceeding for $298 million, based on the Operating Loan. The Mezzanine Lender filed a $39 million claim based on the Mezzanine Loan. The Lender subsequently acquired this claim from the Mezzanine Lender.

The Debtors filed a joint Chapter 11 reorganization plan (the Plan), whereby third-party investor Southwest Value Partners would acquire the Operating Debtors for $30 million, thereby extinguishing the Mezzanine Debtors' ownership interest in the Operating Debtors.

The Lender, whose claim was undersecured, elected to have its entire claim treated as secured pursuant to 11 U.S.C. § 1111(b)(2). The Plan restructured the Lender's loan to a term of 21 years, and required monthly interest payments,

---

[2] The Lender never objected to or argued that the bankruptcy court was treating the case as if substantive consolidation had occurred.

and a balloon principal payment at the end of the term. The Plan included a due-on-sale clause requiring the Debtors to pay the Lender the outstanding balance of the restructured loan in the event the Resorts were sold. However, the due-on-sale clause did not apply if the Debtors were to sell the Resorts between Plan years five and fifteen. The Lender voted against the Plan. Several other impaired classes voted to approve the Plan.

The Lender objected to two aspects of the Plan.[3] First, the Lender objected to the ten-year exception in the due-on-sale clause. It contended that the exception in the due-on-sale clause would allow the Debtors to partially negate the benefit of the Lender's section 1111(b)(2) election. Second, the Lender asserted that section 1129(a)(10), which requires that at least one impaired class accept the Plan, applies on a "per debtor," not a "per plan," basis. Because the Lender is the only class member for the Mezzanine Debtors and did not vote to approve the Plan, the Lender argued that the Plan did not satisfy section 1129(a)(10). Despite the Lender's objections, the bankruptcy court approved the Plan.

Following an unsuccessful emergency motion for a stay pending appeal, the district court dismissed the Lender's appeal as equitably moot. In 2015, we reversed this dismissal and remanded to the district court with instructions to evaluate the Lender's objections on the merits. *Transwest I*, 801 F.3d at 1173. On remand, the district court ruled that an election under section 1111(b)(2) does not require that a due-on-sale clause be included in the Plan, and that section 1129(a)(10) applies on a "per plan" basis. The district court

---

[3] The Lender raised other objections to the Plan, but the parties previously resolved those objections.

thereby affirmed the bankruptcy court's confirmation of the Plan.  The Lender timely appealed to our court.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(1).  Because the Lender appeals from the district court's conclusions of law and interpretations of the Bankruptcy Code, we review *de novo*.  *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1006 (9th Cir. 2005); *In re Barakat*, 99 F.3d 1520, 1523 (9th Cir. 1996).

## ANALYSIS

### I.   11 U.S.C. § 1111(b)

The Lender first challenges the district court's conclusion that a due-on-sale clause need not be included in the Plan when an undersecured creditor elects to have its claim treated as secured pursuant to section 1111(b)(2).  This section must be read in context. Pursuant to section 506(a), an undersecured creditor's claim is bifurcated into: (1) "a secured claim equal to the value of the collateral" and (2) "an unsecured claim equal to the remainder of the obligation owing to the creditor as of the petition date."  *In re Weinstein*, 227 B.R. 284, 291–92 (B.A.P. 9th Cir. 1998). The undersecured creditor may elect to have its entire claim treated as secured pursuant to section 1111(b)(2).  *Id.* at 293; *see* 11 U.S.C. § 1111(b)(2).  The effect of such an election is that the undersecured creditor obtains certain benefits reserved for secured, but not unsecured, creditors.  *See, e.g.*, 11 U.S.C. § 1129(b)(2)(A)–(B) (distinguishing between the "fair and equitable" requirements for secured and unsecured claims).  The Lender contends that the absence of a due-on-sale clause covering sales of the Resorts occurring between years five and fifteen of the loan term partially diminishes

the benefits of its section 1111(b)(2) election, thereby violating section 1111(b)(2).

"The starting point for our interpretation of a statute is always its language." *United States v. Fei Ye*, 436 F.3d 1117, 1120 (9th Cir. 2006) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989)). We must consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" (citation omitted)). Only where the statutory text is ambiguous do we "look to other interpretive tools, including the legislative history," in order to determine the statute's meaning. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567 (2005).

Section 1111(b) provides, in pertinent part:

> (1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—
>
> > (i) the class of which such claim is a party elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection;

. . . .

> (2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

11 U.S.C. § 1111(b).  The Lender's position that section 1111(b)(2) requires a due-on-sale clause to be included in the Plan finds no support in the text of the statute,  nor does the language of the statute implicitly require the inclusion of such a clause.

The broader statutory context of Chapter 11 further undermines the Lender's position.  Section 1123 describes the required contents of a Chapter 11 plan.  *See* 11 U.S.C. § 1123.  Nothing in section 1123 requires the inclusion of a due-on-sale clause in a plan, let alone following a section 1111(b)(2) election.  Instead, section 1123(b)(5) indicates that a plan may "modify the rights of holders of secured claims."  This would include the ability to determine whether to include a due-on-sale clause in the documentation of any secured creditors' claims.  Further, section 1129(b)(2)(A)(i)(I) requires that in order for a plan to be fair and equitable, the holder of a claim must retain the lien securing that claim even when "the property subject to such liens is . . . transferred to another entity."  Thus, the statute expressly allows a debtor to sell the collateral to another entity so long as the creditor retains the lien securing its claim, yet the statute does not mention any due-on-sale requirement, further undermining the Lender's position that a due-on-sale clause must be included in the Plan.

Our conclusion is consistent with the reasoning of the Seventh Circuit in *In re Airadigm Commc'ns, Inc.*, 519 F.3d

640 (7th Cir. 2008). There, FCC regulations required that, under certain circumstances, a due-on-sale clause be included in the documentation when a licensee transfers a license to a non-qualifying entity. *Id.* at 653. A licensee filed a reorganization plan, which a bankruptcy court approved even though it did not contain a due-on-sale clause. *Id.* at 646. The FCC objected to the plan because it "did not keep the FCC's due-on-sale rights." *Id.* at 646, 653. While the FCC did not make an election under section 1111(b), the Seventh Circuit concluded that a due-on-sale provision was not a "lien that the bankruptcy court had to 'retain' in order to approve the plan pursuant to § 1129." *Id.* at 654. Instead, the provision is merely a mechanism "regarding the terms of payment for the debt." *Id.* at 655. The same reasoning applies in this case—a due-on-sale clause is a mechanism regarding the terms of payment of a debt, not a substantive right of creditors making an election pursuant to section 1111(b)(2).

Neither the plain language of section 1111(b)(2) nor the broader context of Chapter 11 requires that a plan involving an electing creditor contain a due-on-sale clause. We need not address the Lender's remaining arguments because the statutory text renders the Lender's other arguments meritless. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). We therefore hold that section 1111(b)(2) does not require that a plan involving an electing creditor contain a due-on-sale clause.[4]

---

[4] This holding does not imply that "due-on-sale" protection is irrelevant to whether a plan is "fair and equitable" under section 1129(b). Although the Lender here waived any argument that the Plan was not "fair and equitable," the availability of due-on-sale protection may inform whether a plan is confirmable in other reorganizations. *Cf. In re*

## II.  11 U.S.C. § 1129(a)(10)

The Lender next challenges the district court's conclusion that section 1129(a)(10) applies on a "per plan" basis.  Generally, a bankruptcy court may confirm a plan only if each class of impaired creditors consents.  11 U.S.C. § 1129(a)(8).    However, in certain instances, a plan proponent can confirm a "cramdown" Chapter 11 plan over the objections of one or more of the creditors.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 641–42 (2012); *see* 11 U.S.C. § 1129(b).  Section 1129 lists the requirements for approval of a cramdown plan, and "contains a number of safeguards for secured creditors who could be negatively impacted by a debtor's reorganization plan." *In re The Vill. at Lakeridge, LLC*, 814 F.3d 993, 1000 (9th Cir. 2016).    One such safeguard is in section 1129(a)(10), which requires that at least one impaired creditor has accepted the plan. *See* 11 U.S.C. § 1129(a)(10).

According to the Lender, a complication arises when there is a jointly administered plan consisting of multiple debtors.  The Lender argues that in such a situation, a "per debtor" approach that requires plan approval from at least one impaired creditor for each debtor involved in the plan is necessary.  In contrast, the Debtors argue that the plain language of the statute contemplates a "per plan" approach in which a plan only requires approval from one impaired creditor for any debtor involved.  As a matter of first impression among the circuit courts, we hold that section 1129(a)(10) applies on a "per plan" basis.

---

*Monarch Beach Venture, Ltd.*, 166 B.R. 428, 436 (Bankr. C.D. Cal. 1993) ("[T]o be fair and equitable, a plan of reorganization cannot unfairly shift the risk of a plan's failure to the creditor.").

As with section 1111(b)(2), we begin our analysis of section 1129(a)(10) with its plain language. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1180 (9th Cir. 2013). Section 1129(a) provides that a court may confirm a plan only if a number of requirements are met. Section 1129(a)(10) details one such requirement: "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10).

The plain language of the statute supports the "per plan" approach. Section 1129(a)(10) requires that one impaired class "under the plan" approve "the plan." It makes no distinction concerning or reference to the creditors of different debtors under "the plan," nor does it distinguish between single-debtor and multi-debtor plans. Under its plain language, once a single impaired class accepts a plan, section 1129(a)(10) is satisfied as to the entire plan. Obviously, Congress could have required plan approval from an impaired class for each debtor involved in a plan, but it did not do so. It is not our role to modify the plain language of a statute by interpretation. *See King*, 135 S. Ct. at 2489 ("If the statutory language is plain, we must enforce it according to its terms.").

The statutory context of section 1129(a)(10) does not aid the Lender's argument. The Lender, citing the only court that has applied the "per debtor" approach, argues that section 102(7) requires that section 1129(a)(10) apply on a "per debtor" basis. *See In re Tribune Co.*, 464 B.R. 126, 182–83 (Bankr. D. Del. 2011). We disagree. Section 102(7), a rule of statutory construction, provides that "the singular includes the plural." 11 U.S.C. § 102(7). This rule of construction does not change our analysis. Section 102(7)

effectively amends section 1129(a)(10) to read: "at least one class of claims that is impaired under the plans has accepted the plans." The "per plan" approach is still consistent with this reading. Therefore, section 102(7) does not undermine our view that section 1129(a)(10) applies on a "per plan" basis.

Nor do other subsections in section 1129(a) indicate that section 1129(a)(10) must apply on a "per debtor" basis. The court in *Tribune* concluded that section 1129(a)(10) must apply on a "per debtor" basis because other subsections apply on a "per debtor" basis. 464 B.R. at 182–83. For example, section 1129(a)(3) requires that "[t]he plan has been proposed in good faith." 11 U.S.C. § 1129(a)(3). This argument fails for two reasons. First, as with subsection ten, nothing in the plain text of subsection three indicates that it applies on a "per debtor" basis. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (holding a court presumes that Congress says in the statute what it means). Second, while a statute must be "read as a whole," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), the Lender provides no support for its position that all subsections must uniformly apply on a "per debtor" basis, especially when the Bankruptcy Code phrases each subsection differently. Instead, the Lender's argument is essentially a regurgitation of a summary of the *Tribune* decision unsupported by argument or other case law. These deficiencies defeat the Lender's argument that section 1129(a)(10) unambiguously applies on a "per debtor" basis based on other subsections in section 1129(a).

The Lender also argues that while the Plan states it is a jointly administered plan, it was, in effect, a substantive consolidation. The Lender's argument faces two hurdles. First, the Lender never objected to the Plan on this basis. As

the Lender's counsel concedes, the only issue before us is the construction of sections 1111(b)(2) and 1129(a)(10). These are the objections the Lender raised before the bankruptcy court, the objections it appealed to the district court, and the issues we previously identified. *See Transwest I*, 801 F.3d at 1166–67. Therefore, whether the parties and the bankruptcy court dealt with the Plan approval as if it were a substantive consolidation is not properly before us on appeal. Second, to the extent the Lender argues that the "per plan" approach would result in a parade of horribles for mezzanine lenders, such hypothetical concerns are policy considerations best left for Congress to resolve. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017) (stating that "the proper role of the judiciary" in statutory interpretation is "to apply, not amend, the work of the People's representatives").

Because the plain language of section 1129(a)(10) indicates that Congress intended a "per plan" approach, we need not to look to the statute's legislative history or address the Lender's remaining policy concerns. *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953 (9th Cir. 2007) (citing *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003)). We therefore hold that section 1129(a)(10) applies on a "per plan" basis.

## CONCLUSION

For the foregoing reasons, we affirm the district court's conclusions that 11 U.S.C. § 1111(b) does not require the inclusion of a due-on-sale clause in the Plan, and that 11 U.S.C. § 1129(a)(10) applies on a "per plan" basis.

AFFIRMED.

FRIEDLAND, Circuit Judge, concurring:

I agree that 11 U.S.C. § 1111(b)(2) does not require that a bankruptcy plan include complete due-on-sale protection for the creditor.  And although I think the statutory language is somewhat ambiguous, I further agree that the better reading of 11 U.S.C. § 1129(a)(10) is that it applies on a "per plan," rather than  "per debtor," basis.  I write separately, however, to acknowledge the argument advanced by JPMCC 2007-C1 Grasslawn Lodging, LLC ("Lender") that it was unfairly deprived of the ability to object effectively to reorganization of the Mezzanine Debtors, despite being their only creditor.  While Lender's concern is not unfounded, I believe any unfairness resulted not from the interpretation of § 1129 that Lender challenged in this appeal, but instead from the fact that this particular reorganization treated the five Debtor entities as if they had been substantively consolidated—something Lender did not object to in the bankruptcy court.

Joint administration and substantive consolidation are both mechanisms to facilitate multi-debtor reorganizations. Joint administration is a tool of convenience; "[t]here is no merging of assets and liabilities of the debtors," and "[c]reditors of each debtor continue to look to that debtor for payment of their claims."  *In re Parkway Calabasas Ltd.*, 89 B.R. 832, 836 (Bankr. C.D. Cal. 1988).  By contrast, substantive consolidation replaces "two or more debtors, each with its own estate and body of creditors," with "a single debtor, a single estate with a common fund of assets, and a single body of creditors."  *Id.* at 836–37*; see also In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000).  Accordingly, "consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates."  *In re Bonham*, 229 F.3d at 762 (quoting Fed. R.

Bankr. P. 1015 advisory committee's note). Here, the cases of the five Debtors were jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015, but neither party moved for substantive consolidation.

Nevertheless, I think Lender is correct that the distribution scheme adopted by the Plan involved a degree of substantive consolidation. Debtors' respective bankruptcy estates may technically have remained separate, but the Plan treated Debtors as a single entity. Specifically, by subordinating the Mezzanine Loan claims to the Operating Loan claims, the creditors for different Debtors all drew from the same pool of assets. And had the Mezzanine Lender voted to accept the Plan, its claims would have been paid from the assets of the reorganized Operating Debtors, demonstrating that the Plan did not differentiate based on the recipient of a particular creditor's loan. As the bankruptcy court itself explained, this arrangement treated the Mezzanine Lender's claims as if the cases had been substantively consolidated.

In many cases involving a reorganization plan that effectively merges the assets and liabilities of multiple debtors, "the constituents in the chapter 11 proceeding either reach this result by consensus, or, no objection is made by any creditor or party in interest." *In re Tribune*, 464 B.R. 126, 183 (Bankr. D. Del. 2011). The plan can thus proceed under a "de facto" substantive consolidation, absent a formal assessment of whether substantive consolidation is appropriate. Here, however, two classes of creditors objected to the Plan: (1) the class consisting of Lender's secured claim, which arose from the mortgage loan secured by the resorts, and (2) the class consisting of the secured and unsecured mezzanine claims, which arose from the mezzanine loan originally provided by Ashford Hospitality

Finance, LP, and subsequently purchased by Lender. Because there was no consensus over these bankruptcy proceedings, there should have been an evaluation of whether substantive consolidation was appropriate before it (effectively) occurred.

To determine whether substantive consolidation is appropriate, a bankruptcy court evaluates "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir. 1992) (quoting *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988)) (internal quotation marks omitted); *see also In re Bonham*, 229 F.3d at 766 (adopting the Second Circuit's test for substantive consolidation). The "sole aim" of this analysis is "fairness to all creditors." *In re Bonham*, 229 F.3d at 765 (quoting *Colonial Realty*, 966 F.2d at 61). Assessing whether substantive consolidation was appropriate here would thus have required the bankruptcy court to consider whether consolidation was fair to Lender, among other creditors.

According to Lender, its treatment under the Plan was unfair, and the root of the potential unfairness is that § 1129(a)(10) was interpreted as applying on a "per plan," rather than a "per debtor," basis. Section 1129(a)(10) requires that at least one impaired class of creditors accept a plan in order for it to be confirmed. Under the "per plan" approach, this provision was satisfied here as soon as any one impaired class from any of the five Debtors accepted the Plan. But if this provision had been applied on a "per debtor" basis, then one impaired class for *each* of the five Debtors would have had to accept the Plan. Because Lender was the

only creditor for the Mezzanine Debtors following its purchase of the mezzanine claims, under the "per debtor" interpretation of § 1129(a)(10) Lender's objection would have prevented the Plan from being confirmed.  Lender argues that use of the "per plan" approach had the same effect as substantive consolidation because one impaired class of creditors for one Debtor was able to bind all of the involved creditors, nullifying the leverage Lender would have otherwise had in the confirmation process under the "per debtor" approach.

Lender thus characterizes the "per plan" approach as "de facto" substantive consolidation.  But this characterization is correct only to the extent that the "per plan" approach allowed for confirmation of a Plan that effectively merged the Debtor entities.  The root of Lender's objection is that the reorganization here was governed by a single plan that did not delineate among separate debtor-creditor relationships.  Had the Debtors—and thus their reorganization plans—remained separate, there would have been no need to invoke the "per debtor" approach to preserve the effectiveness of any objection Lender had.

Although Lender's "per debtor" interpretation would have allowed Lender to object and thereby block confirmation of the Plan, the problem in my view is not the interpretation of the statute, but rather that the Plan effectively merged the Debtors without an assessment of whether consolidation was appropriate.  Such an assessment would have required the bankruptcy court to evaluate whether it was fair to proceed on a consolidated basis.  *In re Bonham*, 229 F.3d at 765.  Had the court taken this step of "balanc[ing] the benefits that substantive consolidation would bring against the harms that it would cause," *id.*, it

might have alleviated concerns about whether consolidation of the proceedings was in fact unfair.

Given that Lender asserts now that de facto substantive consolidation was inappropriate, it is unclear why Lender did not challenge the Plan on that basis prior to confirmation. It is possible that, if there had been an objection raising the question, Debtors' single-purpose entity structure would have defeated any request for substantive consolidation. The original loan documents required maintaining the Operating Debtors and the Mezzanine Debtors as separate entities. As a result, the bankruptcy court might have concluded that creditors treated Debtors as separate entities, and further that the special-purpose entity structure prevented their assets from becoming entangled—thus rendering substantive consolidation unavailable under this circuit's test. *See id.* at 765–66. If so, the court could have required altering the distribution scheme to maintain entity separateness, thus preserving Lender's leverage over the Plan.

If, however, the bankruptcy court had instead determined that this case was a candidate for substantive consolidation, then an appeal of that determination would have involved an evaluation of this particular Plan on its facts and resulting equities—rather than a challenge to the interpretation of a statute that governs all Chapter 11 reorganizations. But because Lender focused solely on the statute, the substantive consolidation objection is now waived.

In sum, I am not unsympathetic to Lender's argument that it was deprived of an opportunity to object to confirmation of the Plan, and I have concerns that entangling various estates in a complex, multi-debtor reorganization diminishes the protections afforded to creditors by the Bankruptcy Code. But I do not believe bolstering these

protections requires the blanket statutory solution that Lender proposes. Rather, if a creditor believes that a reorganization improperly intermingles different estates, the creditor can and should object that the plan—rather than the requirements for confirming the plan—results in de facto substantive consolidation. Such an approach would allow this issue to be assessed on a case-by-case basis, which would be appropriate given the fact-intensive nature of the substantive consolidation inquiry. *See In re Bonham*, 229 F.3d at 765 ("[O]nly through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors." (quoting *Colonial Realty*, 966 F.2d at 61)).